## WORKINGMEN'S LOAN ASS'N v. UNITED STATES.

### No. 3939.

Circuit Court of Appeals, First Circuit.

April 18, 1944.

Jackson R. Collins, of New York City (Edmund Burke and Hale & Dorr, all of Boston, Mass., of counsel), for appellant.

Homer R. Miller, Sp. Asst. to Atty. Gen. Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, A. F. Prescott, and Roland A. Cormier, Sp. Assts. to Atty. Gen., and Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Appellant taxpayer was incorporated in 1888 by special act of the Massachusetts legislature for the purpose of lending money with or without security, and is presently qualified and licensed under the Massachusetts Small Loan Act, Mass.G.L. (1932) c. 140, §§ 96–114. It sued in the court below to recover back the amount paid for the year 1937 as personal holding company surtax imposed under § 351 of the Revenue Act of 1936, 49 Stat. 1648, as amended by § 1 of the Revenue Act of

1937, 50 Stat. 813, 26 U.S.C.A. Int.Rev. Acts, page 936.[1]

Admittedly, the taxpayer falls within the statutory definition of the term "personal holding company" if at least 80% of its gross income for the taxable year consisted of "interest" within the meaning of § 353 and of the applicable regulation.[2] At the trial the taxpayer sought to establish that over 20% of its gross income consisted of charges for services rendered to borrowers which were properly separable from "interest" charges for the use of money lent. The District Court gave judgment for the defendant, accepting the government's contention that the case on its facts was controlled by our decision in Noteman v. Welch, 1 Cir., 1939, 108 F.2d 206.

We think that the facts presented in the present record are significantly different from the facts of the Noteman case, and that the latter case is not controlling here, though some of the language in our Noteman opinion may have been misleading to the District Court.

In Noteman v. Welch we pointed out that the contracts of loan did not assign any specific portion of the payments made by borrowers to particular charges properly separable from interest. In that case the lender made a blanket charge of 3% per month upon unpaid balances of principal, the promissory notes executed by the borrowers reciting that of this charge "approximately one per cent is for interest; and approximately two per cent is for expenses. * * *" The gross income of the taxpayer consisted entirely of payments received from borrowers. The taxpayer had the burden of establishing that over 20% of such payments was for something other than "interest." In support of the recital on the promissory notes that the borrowers were being charged approximately 1% per month for "interest" and approximately 2% per month for "expenses," the taxpayer introduced in evidence its corporation income tax return for the taxable year showing $104,514 as its gross income from payments by borrowers, and total deductions for expenses in the amount of $61,808.50. The latter sum was the whole amount of the lender's operating and overhead expenses in running its busi-

[1] "Sec. 351. Surtax on Personal Holding Companies

"There shall be levied, collected, and paid, for each taxable year (in addition to the taxes imposed by Title I), upon the undistributed adjusted net income of every personal holding company a surtax equal to the sum of the following:

"(1) 65 per centum of the amount thereof not in excess of $2,000; plus

"(2) 75 per centum of the amount thereof in excess of $2,000."

"Sec. 352. Definition of Personal Holding Company

"(a) General rule. For the purposes of this title and of Title I the term 'personal holding company' means any corporation if—

"(1) Gross income requirement. At least 80 per centum of its gross income for the taxable year is personal holding company income as defined in section 353; but if the corporation is a personal holding company with respect to any taxable year, then, for each subsequent taxable year, the minimum percentage shall be 70 per centum in lieu of 80 per centum, until a taxable year during the whole of the last half of which the stock ownership required by paragraph (2) does not exist, or until the expiration of three consecutive taxable years in each of which less than 70 per centum of the gross income is personal holding company income; and

"(a) Stock ownership requirement. At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals.

"(b) Exceptions. The term 'personal holding company' does not include a corporation exempt from taxation under section 101, a bank as defined in section 104, a life insurance company, a surety company, or except with respect to a taxable year ending on or before the date of the enactment of the Revenue Act of 1937, a foreign personal holding company as defined in section 331."

"Sec. 353. Personal Holding Company Income

"For the purposes of this title the term 'personal holding company income' means the portion of the gross income which consists of:

"(a) Dividends, interest, royalties (other than mineral, oil, or gas royalties), annuities."

[2] Treasury Regulations 94, promulgated under the Revenue Act of 1936:

"Art. 351–2. Classification of a Personal Holding Company.— * * *

"(3) Interest.—The term 'interest' means any amounts, includible in gross income under Title I, received for the use of money loaned."

ness; obviously such a composite item could not be claimed as charges for services to borrowers in addition to the charge for the use of borrowed money. We said (108 F.2d at page 213): "A borrower has no interest in the rent which the finance company pays for its offices, in the cost of its office supplies, in the management fees which it pays to an affiliate, in the salaries of its employees, in the cost of its advertising, or in its losses for bad debts, except as those operating expenses require the finance company to charge the borrower more for the use of the money borrowed." We proceeded to examine the taxpayer's breakdown of the expense items and concluded that it was impossible, on the record before us, to allocate any definite portion of the same to charges for services rendered to borrowers properly separable from interest. For instance, we pointed out that the item claimed as expenses for "Investigation of Borrower and Security" represented "the expense of investigating all applicants, though on the average loans are made only to four out of seven investigated. Thus, the actual borrowers bear the overhead expense of investigating rejected applicants. So, the expense of investigating security is spread over all borrowers, including those who borrow without security." Again, we pointed out that the sums allocated for expenses of pursuing delinquent debtors, like losses for bad debts, "obviously do not represent services or expenses in connection with loans to borrowers who are not delinquent; yet they are charged to all borrowers in the undifferentiated item of 2 per cent a month 'for expenses'."

■ Our holding in the Noteman case was that the taxpayer had failed to sustain the burden of proving that over 20% of its gross income was derived from sources other than interest. We recognized, however, that charges made by lenders in connection with making loans are not necessarily all "interest" within the meaning of § 351, and that the loan contract may properly call for the rendition of certain specified services by the lender for which a separate charge is to be made in addition to interest.

■ It is of course true that a borrower may have costs in connection with procuring a loan over and above the interest charge for the use of borrowed money. He may, for example, have to pay the expense of procuring a credit rating in a mercantile agency, or the fee of a certified public accountant for preparing a balance sheet, or an appraiser's fee for appraising property which he offers as security, or the fee of a lawyer for searching a title. In the case of the small individual borrower who applies to a personal finance company for a loan, services of this nature, for which the borrower would otherwise have to pay a third person, are not uncommonly rendered by the finance company for a separate charge in addition to interest. This is well recognized in cases applying the usury statutes. See 21 A.L.R. 871; 63 A.L.R. 836; 105 A.L.R. 810; Am. L. Inst. Restatement of Contracts, § 533. Such separate charges for services actually rendered are legitimate, unless excessive in amount and designed as a cloak for obtaining interest at a higher rate than that permitted by law. See Collins, Evasion and Avoidance of Usury Laws (1940) 8 Law and Contemporary Problems 54.

■ We now come to the facts in the case at bar. The evidence was all stipulated. The relevant portions of the stipulation are as follows:

"5. That if a witness by the name of E. T. Felter, who was assistant treasurer of the Workingmen's Loan Association, were produced by the plaintiff and gave evidence, he would testify in substance according to the contents of an affidavit made by the said E. T. Felter, copy of which is attached hereto, hereby made a part hereof, and marked Exhibit 4.

"6. That the initial charges for investigation, identification, inspection and appraisal as set forth in the affidavit of Mr. Felter are the customary and usual charges made by concerns engaged in business similar to that conducted by the plaintiff.

* * * * *

"13. That in 1937 the gross income of the plaintiff was $125,714.18. That of this amount $37,544.46 is from initial charges, the detail of which is set forth in Exhibit 4. Of the gross income $88,159.72 came from 'interest.' That the fees represented 29.88 per cent of the gross income of the plaintiff; that 'interest' represented only 70.12 per cent.

"14. That neither party is to be prejudiced by the use of the phrases 'interest,' 'interest and charges,' 'interest and services,' or similar phrases when used (a) in the body of the stipulation, (b) concern-

ing the plaintiff's books, records or activities, and (c) in the statements of counsel."

The affidavit of E. T. Felter which was made part of the stipulation of facts was to the following effect, with reference to the manner in which the taxpayer conducted its business: In making loans and keeping its books, the taxpayer has had the practice of separating what it regards as the interest charges from charges for services to borrowers in investigating, identifying, inspecting and appraising the credit and security of the borrower. A so-called "initial charge" for these separate services is made known to the borrower before the loan is consummated and is collected in advance as a flat sum which does not vary with the duration of the loan. These initial charges, as distinguished from interest, are adjusted to the nature of the loan. In the case of unsecured loans the borrower makes an initial payment of from $3 to $5, depending on the size of the loan, plus an additional sum equal to 2% of the face of the note. In the case of secured loans there is an initial charge of $5, plus an additional charge varying between 2% and 7%, depending upon the type of security involved. The interest rate, as distinguished from the initial charge, is 1% a month on the unpaid balance; this is the only charge mentioned in the form of promissory note executed by borrowers from the taxpayer.

It is to be emphasized that these initial charges are adjusted to the amount and type of loan, secured or unsecured, and are specifically allocated, by agreement with the borrower, to the expense of "investigation, identification, inspection and appraisal." They are "the customary and usual charges made by concerns engaged in business similar to that conducted by the plaintiff." They are paid in advance, and do not depend upon the duration of the loan, whereas in the Noteman case the blanket charge for "expenses" was fixed at 2% a month on the unpaid balances and ran along during the whole life of the loan. There was no suggestion that the present taxpayer's charges for specific initial services were excessive and a mere device for concealing an exaction not permitted by law. Indeed, as indicated in the Noteman case, the personal finance company in Massachusetts gains no particular advantage by segregating the charges for initial services and the charges for interest, because the Massachusetts Small Loan Act

authorizes the Commissioner of Banks to prescribe an over-all charge "for interest and expenses" not to exceed 3% a month, to be paid by the borrower; beyond this "No charge, bonus, fee, expense or demand of any nature whatsoever" may be exacted from the borrower in connection with the loan. As a matter of fact, the aggregate charges made by the present taxpayer appear to be substantially less than the maximum allowed by law.

In view of the stipulated facts, it is our opinion that the taxpayer made out its case for a refund.

The judgment of the District Court is vacated, and the case is remanded to that court for the entry of judgment for the plaintiff in the appropriate amount.