Jasper L. House, Jr. and Edra F. House, et al. [1] v. Commissioner. House v. Commissioner
Docket Nos. 5843-66, 5844-66, 5845-66, 5846-66.
United States Tax Court
T.C. Memo 1970-125; 1970 Tax Ct. Memo LEXIS 233; 29 T.C.M. (CCH) 533; T.C.M. (RIA) 70125; May 26, 1970, Filed Royce Jay Hailey, Jr. and Charles F. Herring, 906 Perry-Brooks Bldg. , Austin, Tex., for the petitioners. Harold Friedman, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the years and in the amounts as follows: Docket number
Petitioners
Year
Deficiency
5843-66
Jasper L. House, Jr., and Edra F. House
1964
$2,068.96
5844-66
Jasper L. House, Jr.
1963
2,391.91
5845-66
Edra F. House
1963
2,391.91
5846-66
H.R.S. Corporation, dba Home Credit Company
1964
3,090.65
One of the issues raised by the pleadings has been conceded by petitioners, leaving for our decision the following: Whether *235 the subchapter S status of petitioner, H.R.S. Corporation, and certain other small loan corporations of which petitioners Jasper L. and Edra F. House were shareholders, terminated under the provisions of section 1372(e)(5), I.R.C. 1954, [2] because of more than 20 percent of their gross receipts being from interest. Findings of Fact Some of the facts have been stipulated and are found accordingly. Jasper L. House, Jr. (hereinafter referred to as House) and his wife, Edra F. House, resided in Waco, Texas, at the date of the filing of the petition in this case. They filed their Federal income tax returns for the calendar years 1963 and 1964 with the district director of internal revenue in Austin, Texas. For the calendar year 1963 House and his wife, Edra, each filed a separate income tax return and for 1964 they filed a joint income tax return. H.R.S. Corporation, dba Home Credit Company (hereinafter referred to as H.R.S.), is a corporation organized under the laws of the State of Texas. Its home office and principal place of business was in Waco, Texas, at the time it filed its petition in this case, and it filed *236 its Federal income tax return for the calendar year 1964 with the district director of internal revenue in Austin, Texas. H.R.S. and Lincoln Loans, Inc.; Hopitt No. 1, Inc.; HRST Finance Co., Inc.; Loan Management Co., Inc.; and Guaranty Finance and Thrift, Inc., all of which are corporations engaged in the business of making small loans (loans under $100) in the State of Texas have been subject from the date it became effective to the Texas Regulatory Loan Act, Acts of the 58th Legislature, Reg. Sess., 1963, chapter 205, p. 553. H.R.S. and each of the other corporations met all of the requirements of section 1371(a) in the proper manner and at the proper time so as to qualify as small business corporations under subchapter S unless such qualification is terminated under section 1372(e)(5) which is the issue herein. House and his wife, Edra, are shareholders of each of these corporations. House, in addition to being a shareholder in each corporation listed above, is actively engaged in the management of each such corporation. He supervises and directs the making of loans and the other day-to-day operations of these corporations. Under the Texas Regulatory Loan Act, a small loan *237 company is limited to making loans in amounts of $100 or less. In general the borrowers from small loan companies are people who lack collateral and who move and change jobs frequently. The maximum rate of interest including charges, are specifically described in section 17(b) of the Texas Regulatory Loan Act. [3] This Act 535 provides in the case of loans in excess of $19 for an "acquisition charge" for making the advance not in excess of one-tenth of the amount of the cash advance and for a monthly "handling charge" for each month the loan is outstanding. The duration of a loan of $19 or less is limited to 1 month and the charge permitted is $1 for each $5 advanced. *238 All the corporations which are here involved made the maximum allowable charges for all loans which they made. For example if a borrower were given a cash advance of $60 for 4 months, the total charge would be $20, composed of $6 as "acquisition charges" and $3.50 per month or $14 as "installment handling charges." No other charge is made for "interest." The amount of the note would be $80 composed of the $60 advanced plus $14 plus $6. The $20 of "charges" is recorded as income of the loan company on the books at the time the loan is made and is reported as such for Federal income tax in the taxable year so recorded. When the loan is repaid, the entire sum paid is applied to the total note originally taken. If the loan is paid in full prior to the expiration of the note, a specified portion of the installment handling charge is returned to the borrower, but none of the "acquisition charge" is refunded. No charge in addition to "acquisition charges" is allowable under Texas law or made by any of the corporations here involved to cover their expenses, if any, of checking credit, verifying jobs and making any investigation into the character and reputation of the borrower. Generally *239 these corporations check the credit of a borrower through the loan companies in town, the credit bureau, and other sources of such borrower's credit. These investigations and checks are sometimes conducted by persons who are not regular employees of the loan company. The accounting method employed by the small loan companies involved herein does not make a segregation of the cost, if any, for investigation and credit checks for the loans made. No record is kept by these corporations from which their officers may know whether the acquisition charges are more or less than their costs of investigation in making a loan. The income statement of H.R.S. shown on its 1964 Federal income tax return which is in the same form as the income statements made by the other corporations here involved is as follows: Income:
Other income - acquisition and handling charges:
$63,841.95
Gross income:
$63,841.95
Expenses (Deductions)
Salaries and wages
$17,918.22
Repairs
311.94
Bad debts
4,207.15
Rent
1,620.00
Taxes
947.59
Interest
1,784.14
Contributions or gift
73.50
Depreciation
898.84
Advertising
2,312.87
Other deductions:
Supervision fees
$3,125.00
Utilities
867.97
Office supplies
1,126.56
Leased equipment
62.44
Other deductions - continued
Telephone & telegraph
$1,357.99
Dues & subscriptions
299.78
Credit & Collections
854.31
Postage & box rent
2,297.03
Automobile allowance
691.42
Travel & entertainment
61.88
Janitor & supplies
392.88
Insurance & bonds
259.13
Refunds
6,587.73
Legal & professional
580.06
Bond service charges
11.41
Miscellaneous expense 1,143.70
Total other deductions $19,719.29
Total expenses $49,793.54
Net income: $14,048.41
*240 536 Loan payments are not broken down on the books of any of the corporations here involved between principal and interest or principal and charges but such a breakdown is computable from analysis of each company's collection records. The following shows the amount of notes received, installment handling charges, acquisition charges, and refunds or rebates for Hopitt No. 1, Inc., and Lincoln Loans, Inc., for 1963 and for Hopitt No. 1, Inc.; HRST Finance, Inc.; H.R.S.; Guaranty Finance and Thrift Corp.; Lincoln Loans, Inc.; and Loan Management Co., Inc., for 1964: "Collections
"Installment
on notes
handling
"Acquisition
"Refunds
receivable" [1]
charges"
charges"
or rebates"
1963
Hopitt No. 1, Inc.
$ 21,724.63
$ 5,640.00
$ 2,126.70
$ 516.12
Lincoln Loans, Inc.
15,515.45
5,992.30
2,135.90
174.99
1964
Hopitt No. 1, Inc.
174,705.93
34,367.00
13,885.10
5,789.11
HRST Finance, Inc.
97,585.57
18,825.50
7,693.45
2,298.19
H.R.S.
229,638.34
43,708.50
17,550.50
6,587.73
Guaranty Finance and Thrift Corp.
205,415.54
39,629.00
15,884.80
4,963.45
Lincoln Loans, Inc
150,315.67
33,775.00
13,457.10
4,293.74
Loan Management Co., Inc
243,119.49
41,533.50
17,409.70
4,953.33
*241 The figures for 1963 for Hopitt No. 1, Inc., and Lincoln Loans, Inc., represent only 2 months of operation for each of the corporations and do not make allowances for all the refunds which ultimately may have been made on the "installment handling charges." House and his wife, Edra, each computed his 1963 income tax liability on the basis that Lincoln Loans, Inc., and Hopitt No. 1, Inc., were qualified small business corporations under subchapter S and that each of their proportionate shares of the net operating loss of each of the corporations was reportable by them as "shareholders." On this basis each claimed losses on his Federal income tax return of $3,977.47 composed of losses from Lincoln Loans, Inc., of $1,504.11 and from Hopitt No. 1, Inc., of $6,450.82 for a total of $7,954.93 or $3,977.46 each. House and Edra on their joint income tax return for 1964 computed their tax liability on the basis that HRST Finance, Inc.; Loan Management Co., Inc.; Hopitt No. 1, Inc.; Guaranty Finance and Thrift Corp.; Lincoln Loans, Inc.; and H.R.S. were qualified small business corporations *242 under subchapter S and that the named corporations had ordinary income of $3,146.52 [4] and net operating losses of $12,803.83 which was reportable by them as "shareholders." 537 Respondent in his notice of deficiency to H.R.S. computed its corporate income tax for 1964 on the amount of taxable income shown on its Form 1120-S "U.S. Small Business Corporation Return of Income" for that calendar year with the explanation that it did not qualify as a small business corporation. Respondent in his notices of deficiency to each House and Edra for 1963 and to them jointly for 1964 disallowed to them the reported losses of the small loan corporations with respect to which they had reported losses and reduced their reported income by the gains reported from those corporations which had gains with the explanation that none of these corporations qualified as small business corporations. Opinion Under the provisions of section 1372(e)(5) a corporation's election to be taxed as a small business *243 corporation under subchapter S is terminated if more than 20 percent of its gross receipts is derived from interest. Since small loan corporations normally derive more than 20 percent of their gross receipts from interest, petitioners contend that such corporations should be excluded from the provisions of section 1372(e)(5). Petitioners base their position primarily on the premise that since most small loan corporations are specifically excluded from the definition of a "personal holding company" contained in section 542(a) by the specific provisions of section 543(c)(6), they should likewise be excluded from the provisions of section 1372(e)(5) which for the years here involved was entitled "Personal holding company income." [5]
*244 In Buhler Mortgage Co., 51 T.C. 971 (1969), on appeal (C.A. 9, June 11, 1969), we held that the provisions of respondent's regulations exempting gain on the sale of securities by dealers from personal holding company income, promulgated under section 543(a)(2) as applicable to years prior to 1964 was based on a specific statutory exclusion and did not apply to section 1372(e)(5) since no similar exclusion is contained in subchapter S. We stated that "in the absence of any such statutory exclusion, we cannot imply any exclusion * * * by judicial fiat." In our view there is no distinction in petitioners' contention in the instant case and the contention of the taxpayer in Buhler Mortgage Co., supra. In fact, the taxpayer in Buhler Mortgage Co. made the same arguments as do petitioners in this case, namely, that the purpose of section 1372 (e)(5) was to exclude from the provisions of subchapter S those corporations which had large amounts of investment type income. In ruling on this contention we recognized that the subchapter S provisions were not intended to include corporations with large amounts of investment type income, but held that the standard used *245 by the Code and the regulations "does not permit us to look behind the normal characterizations of a corporation's receipts in order to classify them as active or passive." In our view petitioners' contention in the instant case is disposed of by our holding in Buhler Mortgage Co., supra. Petitioners rely for support of their position on Valley Loan Association v. United States 258 F. Supp. 673 (D. Colo. 1966), in which the Court held that respondent's regulation excluding from "gross receipts" the repayment of loans was invalid as applied to a corporation engaged in financing of retail installment sales of consumer goods. In so holding the Court stated (258 F. Supp. at 675-676): There is nothing in subchapter S which specifically excludes from gross receipts the amount received for repayment of such loans. It is obvious that if the defendant's position is correct, finance or loan companies are excluded from the benefits of subchapter S for their gross receipts under the defendant's theory are for all practical purposes limited to receipts of interest. We find nothing in subchapter S or in its legislative history that indicates that *246 congress had any such intent. The act itself indicates that congress intended section 1372(e)(5) to apply only to personal holding company income, for that is the subheading of that particular section. Since 1938 loan companies engaging in activities similar to those of the 538 plaintiff have been excluded by congress from the definition of a personal holding company (see Title 26 U.S.C. section 542 and the legislative history therein.) In the court's opinion the section as written indicates no intent to exclude loan and finance companies from the benefits of subchapter S. Since subchapter S does not expressly or by implication exclude from gross receipts the repayments of the principal of the plaintiff's loans and installment contracts, the court concludes that Treasury Regulation 1372-4 insofar as the defendant construes it to exclude from gross receipts the repayment of the loans made and installment contracts acquired by the plaintiff in the ordinary course of its loan business is contrary to the congressional act and congressional intent * * * It is to be noted that the Court did not hold that because a loan company was excluded from the definition *247 of a personal holding company as set forth in section 542 it was likewise excluded from the provisions of section 1372(e)(5). In fact the import of its opinion is to the contrary. If the conclusion in Valley Loan Association v. United States, supra, had been that loan companies were exempt from the provisions of section 1372(e)(5) because they were excluded from the definition of a personal holding company as set forth in section 542, it would have been unnecessary to hold respondent's regulations excluding from "gross receipts" repayments of loans to be invalid. Without in any way expressing approval of the conclusion of the Court in Valley Loan Association v. United States, supra, we do not consider that it supports petitioner's position that small loan companies are excluded from the application of section 1372(e)(5). We find nothing in the legislative history of section 1372(e)(5) to support petitioner's position. The fact that a specific exclusion existed in the case of the definition of a personal holding company at the time section 1372(e)(5) was enacted but no exclusion from the provisions of section 1372(e)(5) was made for loan companies supports *248 the conclusion that no such exclusion was intended by Congress. In the alternative petitioners contend that more than 20 percent of the gross receipts of each of the corporations here involved was not from "interest." To reach this conclusion petitioners contend that repayments of loans should be included in gross receipts and respondent's regulations to the contrary should be held invalid.[6] Since if both acquisition charges and installment handling charges are considered as "interest" more than 20 percent of the gross receipts of each of the corporations here involved was from interest even if repayments of loans are considered as "gross receipts," petitioners further contend that acquisition charges are not "interest" within the meaning of section 1372(e)(5). For the year 1963 even if acquisition charges are not considered interest and repayments of loans are considered gross receipts, the amounts petitioners concede to be "interest" (the installment handling charges) exceeds 20 percent of the gross receipts of each of the corporations involved in that year. However, in our view the "acquisition charges" are "interest" within the meaning of section 1372(e)(5). In Western Credit Co., 38 T.C. 979 (1962), *249 affirmed per curiam 325 F. 2d 1022 (C.A. 9, 1962), we held charges made by a loan company which were indistinguishable in nature from the acquisition charges here involved to be "interest" within the meaning of section 543(a)(1). There is nothing to indicate that "interest" as used in section 1372(e)(5) has any different meaning from "interest" as used in section 543(a)(1). *250 In Western Credit Co., supra, we analyzed in detail the cases of Workingmen's Loan 539 Association v. United States, 142 F. 2d 359 (C.A. 1, 1944), and Noteman v. Welch, 108 F. 2d 206 (C.A. 1, 1939), relied on by petitioners in the instant case. We also discussed a number of our decisions holding "acquisition charges" comparable to those involved in the instant case to be interest. On the basis of our holding in Western Credit Co., supra, we hold the "acquisition charges" here involved to be interest. As our findings of fact show the "acquisition charges" were made with no relation to the amount or cost, if any, of any investigation made by each corporation in making a particular loan. They were in the amount set by law and were not by agreement with the borrower. On this basis these charges are distinguishable from charges by agreement with the borrower and dependent in amount on the nature of the loan which were involved in Workingmen's Loan Association v. United States, supra. Since in our view the acquisition charges are "interest" within the meaning of section 1372(e)(5), more than 20 percent of the gross *251 receipts of each of the corporations here involved was from interest even if petitioners' contention that repayments of loans should be considered as gross receipts is correct. For this reason we have not considered this contention of petitioners and specifically refrain from expressing an opinion with respect to its validity. Decision will be entered for respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Jasper L. House, Jr., Docket No. 5844-66; Edra F. House, Docket No. 5845-66; and H.R.S. Corporation, dba Home Credit Company, Docket No. 5846-66.↩
2. All references are to the Internal Revenue Code of 1954.↩
3. Tex. Regulatory Loan Act, ch. 205, sec. 17(b) (1963) reads as follows: (b) On loans of One Hundred Dollars ($100) or less, a licensee may charge, in lieu of charges specified in Section 17(a)(1) of this Act, the following amounts: (1) On any amount up to and including Nineteen Dollars ($19) a charge may be added at the ratio of One Dollar ($1) for each Five Dollars ($5) of cash or credit advanced to the borrower and such advance of cash or credit shall be for a period of one (1) month only. (2) On any cash advance in an amount in excess of Nineteen Dollars ($19) up to and including the amount of Thirty-five Dollars ($35) there shall be allowed an acquisition charge for making the advance not in excess of one-tenth (1/10th) of the amount of the cash advance. In addition thereto, an installment account handling charge shall be allowed not to exceed Three Dollars ($3) per month and such advance of cash or credit shall be for a period of either one (1) or two (2) months. (3) On any cash advance of an amount in excess of Thirty-five Dollars ($35) but not more than Seventy Dollars ($70) there shall be allowed an acquisition charge for making the advance not in excess of one-tenth (1/10th) of the amount of the cash advance. In addition thereto, an installment account handling charge shall be allowed not to exceed Three Dollars Fifty Cents ($3.50) per month and such advance of cash or credit shall be for a period of not less than one (1) month nor more than four (4) months. (4) On any cash advance of an amount in excess of Seventy Dollars ($70) but not in excess of One Hundred Dollars ($100) there shall be allowed an acquisition charge for making the advance not in excess of one-tenth (1/10th) of the amount of the cash advance. In addition thereto, an installment account handling charge shall be allowed not to exceed Four Dollars ($4) per month, and such contract of loan shall not contain a maturity date of less than one (1) month nor more than six (6) months. (5) On such loans under this subsection, no insurance premium charges or any other charges of any nature whatsoever shall be permitted. (6) The acquisition charge authorized herein shall be deemed to be earned at the time a loan is made and shall not be subject to refund. On the prepayment of any loan under this subsection the installment account handling charge shall be subject to the provisions of subsection (a) herein as it relates to refunds. Provisions of subsection (a) herein relating to default charges on loans and the extension of loans shall apply to loans made under this subsection.↩
1. Notes receivable consist of "cash advanced," "handling charges," and"acquisition charges."↩
4. The statutory notice of deficiency stated the figure as $3,346.52 based on a dividend reported as $2,770. Since the actual dividend reported was $2,970, the proper figure is $3,146.52.↩
5. Sec. 1372(e)(5), as applicable to the years 1963 and 1964 provided: (5) Personal holding company income. - An election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom). Such termination shall be effective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation.↩
6. Sec. 1.1372-4(b)(5)(ii)(a), Income Tax Regs., provided: (ii) Gross receipts. (a) The term "gross receipts" as used in section 1372(e) is not synonymous with "gross income". The test under section 1372(e)(4) and (5) shall be made on the basis of total gross receipts, except that, for purposes of section 1372(e)(5)↩, gross receipts from the sales or exchanges of stock or securities shall be taken into account only to the extent of gains therefrom. The term "gross receipts" means the total amount received or accrued under the method of accounting used by the corporation in computing its taxable income. Thus, the total amount of receipts is not reduced by returns and allowances, cost, or deductions. For example, gross receipts will include the total amount received or accrued during the corporation's taxable year from the sale or exchange (including a sale or exchange to which section 337 applies) of any kind of property, from investments, and for services rendered by the corporation. However, gross receipts does not include amounts received in nontaxable sales or exchanges (other than those to which section 337 applies), except to the extent that gain is recognized by the corportion, nor does that term include amounts received as a loan, as a repayment of a loan, as a contribution to capital, or on the issuance by the corporation of its own stock.