ALFRED M. SIEH, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

BONA FIDE, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Dockets Nos. 5157–68, 5158–68.    Filed September 29, 1971.

*Francis J. Pruss,* for the petitioners.
*Ivan L. Onnen* and *Robert H. Burgess,* for the respondent.

FAY, *Judge:* Due to common issues of fact and questions of law, two cases have been consolidated for purposes of trial, briefing, and opinion. Respondent determined deficiencies in petitioners' income taxes as follows:

| Docket No. | Deficiency | | | |
|---|---|---|---|---|
| | 1959 | 1960 | 1962 | 1964 |
| 5157–68 | | | $2,728.07 | $3,684.22 |
| 5158–68 | $1,569.44 | $1,251.69 | 93.53 | |

Concessions having been made, the issues left for decision are: (1) Whether Bona Fide, Inc., was a personal holding company during the years 1959 and 1960 and therefore subject to the personal holding company tax imposed by section 541; [1] (2) whether Bona Fide, Inc.'s election to be taxed as a small business corporation under subchapter S of the Internal Revenue Code of 1954 was terminated as of January 1, 1960; and (3) whether petitioner Alfred M. Sieh received a dividend of $2,404.10 from Bona Fide, Inc., in taxable year 1964.

### FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference.

Petitioner Alfred M. Sieh (sometimes referred to as petitioner or Alfred) resided in Cedar Rapids, Iowa, at the time of filing the peti-

---

[1] All section references are to the Internal Revenue Code of 1954, unless otherwise indicated.

tion in this case. He filed Federal income tax returns for taxable years 1962 and 1964 with the district director of internal revenue, Des Moines, Iowa.

Bona Fide, Inc. (sometimes referred to as Bona Fide or the corporation), was incorporated under the laws of the State of Iowa in 1956. At the time of filing the petition herein, its principal place of business was in Cedar Rapids, Iowa. Bona Fide filed a corporate income tax return for taxable year 1959 with the district director of internal revenue, Des Moines, Iowa. For taxable years 1960 through 1964 Bona Fide filed small business corporation information returns with the same district director.

During the years in question, Alfred was employed as a real estate sales manager of the Iowa Securities Co. (sometimes referred to as Iowa Securities) in Cedar Rapids, Iowa. Serving in this capacity, it was his primary duty to supervise the sale of real estate by Iowa Securities. To facilitate the making of sales, petitioner formed Bona Fide in 1956. Bona Fide, during 1959, 1960, and 1962, had 82 shares of common stock outstanding, 81 owned by Alfred and 1 by his brother.

The function of Bona Fide was to provide financing to prospective purchasers who could not otherwise finance the purchase of a home. Bona Fide was particularly useful in situations where a good-risk purchaser was unable to raise sufficient funds to meet downpayment requirements or to purchase the seller's equity. In such instances, Bona Fide would purchase the home through Iowa Securities and in turn resell the property to the buyer on terms (usually a small downpayment was involved) mutually agreeable to both. Payments made on these loans consisted of principal, interest, and escrow payments. The escrow payments included necessary premiums for insurance and advance property taxes. The portion of each payment constituting principal, interest, or escrow payment was noted on the back of the real estate contracts written between Bona Fide and the buyers. In purchasing real estate from sellers, Bona Fide either paid the seller for his equity and assumed the outstanding mortgage or would make the required downpayment and execute its own new mortgage. Under either of these procedures, Bona Fide incurred and paid interest on the mortgages. Bona Fide was simultaneously receiving interest income and making interest payments. Treating the receipt and payment of interest as a wash transaction, Bona Fide reported only the following net amounts as income on its returns:

| 1959 | $3,072.50 |
| 1960 | 6,044.55 |
| 1962 | 4,359.31 |

The gross amounts of interest, principal, and escrow payments actually received were:

|                 | 1959       | 1960        |
| --------------- | ---------- | ----------- |
| Total interest  | $9, 148. 37 | $13, 741. 95 |
| Total principal | 26, 921. 57 | 20, 028. 81 |
| Total escrow    | 2, 479. 85  | 4, 616. 45   |

In 1964, Alfred received a distribution in the amount of $2,404.10 from Bona Fide.

Respondent, concluding that Bona Fide was a personal holding company and also that its election to be taxed as a subchapter S small business corporation had terminated, determined the deficiencies here in question. In addition, the distribution of $2,040.10 made to Alfred in 1964 was treated as a dividend, thereby giving rise to the only deficiency with respect to Alfred still in dispute.

### OPINION

The issues to be decided are: First, whether Bona Fide received sufficient personal holding company income to warrant imposition of the personal holding company tax levied by section 541; second, whether receipt of interest income in excess of the personal holding company income limit permitted by section 1372(e)(5) resulted in the termination of Bona Fide's election to be taxed as a small business corporation; and, finally, whether the distribution admittedly received by Alfred from Bona Fide constitutes a dividend under sections 301 and 316.

Alfred, as sales manager of Iowa Securities, was involved in the sale of residential housing. To facilitate the sale of houses, Alfred formed Bona Fide, Inc. In 1960 Bona Fide filed an election to be taxed as a small business corporation under sections 1371 *et seq.* of the Internal Revenue Code of 1954. The principal function of Bona Fide was to assist buyers whose financial condition made it impossible to meet either the sellers' financial requirements or those demanded by conventional housing loans. In practice, a prospective purchaser of property listed by Iowa Securities would find himself financially unable to complete the transaction. Bona Fide would then purchase the property through Iowa Securities and in turn resell it to the prospective purchaser on agreeable terms, making the purchase feasible and employing a conditional real estate sales contract. Normally, Bona Fide acquired property only after an arrangement for resale had been made. After making the sale and as a part thereof, Bona Fide received payments over a number of years. Each payment received from a buyer consisted partially of principal, interest, and an

amount paid in escrow for property taxes and insurance. It is the portion of each payment constituting interest that gives rise to the dispute herein. If the interest received constitutes personal holding company income and exceeds the permissible limits provided in the statutory scheme, respondent necessarily prevails on two of the three issues before us.

Resolution of the question relating to the imposition of the personal holding company tax under section 541 [2] turns on whether the interest received by Bona Fide constitutes personal holding company income. For the years 1959 and 1960, section 543(a) provided in part:

SEC. 543. PERSONAL HOLDING COMPANY INCOME.

(a) GENERAL RULE.—For purposes of this subtitle, the term "personal holding company income" means the portion of the gross income which consists of:

(1) DIVIDENDS, ETC.—Dividends, interest, royalties * * * and annuities. This paragraph shall not apply to interest constituting rent as defined in paragraph (7) * * *

\* \* \* \* \* \* \*

(7) RENTS.—Rents, unless constituting 50 percent or more of the gross income. For purposes of this paragraph, the term "rents" means compensation, however designated, for the use of, or right to use, property, and the interest on debts owed to the corporation, to the extent such debts represent the price for which real property held primarily for sale to customers in the ordinary course of its trade or business was sold or exchanged by the corporation * * *

It is petitioners' contention that the interest received by Bona Fide qualifies as rent under section 543(a)(7), that it constitutes 50 percent or more of gross income, and therefore it is not personal holding company income. Respondent, on the other hand, maintains that the interest received does not fall within the "rent" provision of section 543(a)(7) but does however come within the personal holding company income provisions of section 543(a)(1). He therefore concludes that since the interest income exceeds 80 percent of Bona Fide's gross income in both 1959 and 1960, Bona Fide is a personal holding company within the scope of section 542 [3] and therefore must pay the tax imposed by section 541.

[2] SEC. 541. IMPOSITION OF PERSONAL HOLDING COMPANY TAX.

In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the undistributed personal holding company income (as defined in section 545) of every personal holding company (as defined in section 542) a personal holding company tax equal to the sum of—

(1) 75 percent of the undistributed personal holding company income not in excess of $2,000, plus

(2) 85 percent of the undistributed personal holding company income in excess of $2,000.

[3] SEC. 542. DEFINITION OF PERSONAL HOLDING COMPANY.

(a) GENERAL RULE.—For purposes of this subtitle, the term "personal holding company" means any corporation (other than a corporation described in subsection (c)) if—

(1) GROSS INCOME REQUIREMENT.—At least 80 percent of its gross income for the taxable year is personal holding company income as defined in section 543, * * *

Whether the interest received by Bona Fide is entitled to be treated as rent depends on whether it qualifies under section 543(a)(7). To do so, it must be interest on debts owed to the corporation attributable to the sale by the corporation of real property held primarily for sale in the ordinary course of its trade or business. We are not convinced that the interest can be so characterized in this case. The trade or business operated by Bona Fide is one of financing, and not the sale of property. All sales work was performed, and commissions earned, by Iowa Securities. It is true that in most instances legal title was transferred to Bona Fide which in turn executed a conditional sales contract with the purchaser. In receiving said property, however, Bona Fide acted as a mere conduit in a transaction that consisted of a sale of property by Iowa Securities through financing handled by Bona Fide. We are fortified in this conclusion by the testimony of Alfred wherein he states:

Q. So, was Bona Fide effective? Was it doing the job it was supposed to be doing?

\*     \*     \*     \*     \*     \*     \*

A. So, I answer that, was it effective. Who can say what's most effective. There's so many darn things, but at least, I always felt that Bona Fide really gave us a little advantage. We had good financing. We had FHA and we had GI, and so with the addition of Bona Fide, we had the best financing available of— for any home buyer and—in Cedar Rapids. Whether we had the best sales force or not, we had the best tools.

Since Bona Fide is not in the business of selling real estate and at no time held property primarily for sale to customers in the ordinary course of business, the interest payments received do not constitute rent.

It is virtually conceded that the interest received was in excess of 80 percent of Bona Fide's gross income in both 1959 and 1960. The gross income reported by Bona Fide for 1959 was entirely interest income and in 1960 $6,044.55 of the $7,144.29 gross income consisted of interest. Eighty percent of the latter figure is $5,715.43. Since the interest received exceeds this figure, Bona Fide is also a personal holding company for 1960.

Bona Fide maintains that any assertion by respondent that it is a personal holding company is precluded by the doctrine of estoppel. This argument is founded on Alfred's testimony that but for the visit of, and suggestion by, an internal revenue agent the corporation would have distributed all of its personal holding company income and thereby avoided the imposition of any tax under section 541. Such bald and unsupported assertions by an interested party are insufficient grounds for applying the doctrine of estoppel. Furthermore, it would appear that any representations made by the agent to petitioners in

this case involved opinions of law. An erroneous interpretation of the law by respondent's agent does not bind respondent and does not give rise to an estoppel argument. See *Bookwalter* v. *Mayer*, 345 F. 2d 476 (C.A. 8, 1965).

The second issue to be decided involves questions similar to those answered above. Bona Fide elected for 1960 to be taxed as a small business corporation under sections 1371, *et seq*. It is entitled to be taxed under those sections until the election is terminated. Sec. 1372 (d). Under section 1372(e)(5) [4] an election is involuntarily terminated if for any taxable year the corporation has personal holding company income exceeding 20 percent of its gross receipts. It is clear, and in fact uncontested, that interest falls within the scope of personal holding company income. Petitioners do, however, contend that Bona Fide's gross receipts were composed of less than 20-percent interest. In making their calculations, petitioners aggregate and label as gross receipts (1) the total purchase price of each property sold through Bona Fide, (2) the actual payments on principal received for sales made in the past, (3) amounts paid into escrow for the payment of insurance and taxes, and (4) interest. Petitioners take the lump sum of the four above factors, compare it to the interest received, and conclude that gross receipts consist of less than 20-percent interest. Were we to compute gross receipts in the manner urged by petitioners, their argument would be convincing. It would also require, however, that we give the statute a distorted and unreasonable reading. Rather than do so we choose to follow a contrary path urged by respondent.

Respondent in section 1.1372-4(b)(5)(iv), Income Tax Regs., defines gross receipts as follows:

(iv) * * * The term "gross receipts" means the total amount received or accrued under the method of accounting used by the corporation in computing its taxable income. Thus, the total amount of receipts is not reduced by returns and allowances, cost, or deductions. For example, gross receipts will include the total amount received or accrued during the corporation's taxable year from the sale or exchange (including a sale or exchange to which section 337 applies) of any kind of property, from investments, and for services rendered by the corporation. * * *

---

[4] For taxable year 1960 this section read in pertinent part:

SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION.

(e) TERMINATION—

(5) PERSONAL HOLDING COMPANY INCOME.—An election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom). Such termination shall be effective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation.

Under this regulation, calculation of gross receipts depends on the method of accounting employed by the taxpayer. Where an accrual method is employed, taxpayers are entitled to include in gross receipts the total purchase price of the property sold. Only the actual amounts of principal payments received during the year are includable if the cash method is employed. Inclusion of both is clearly and properly prohibited by the regulation. Respondent has properly concluded, as is evident from Bona Fide's 1960 income tax return, that the corporation employed a cash receipts method of accounting. The record divulges no attempt to prove otherwise and we therefore must conclude that Bona Fide was, in 1960, a cash basis taxpayer. In calculating its gross receipts, it is entitled to take into account no more than the payments on principal actually received. In 1960 Bona Fide received payments of principal amounting to $20,028.81 and interest of $13,741.95. Even a cursory comparison demonstrates that the interest income factor easily exceeds 20 percent of the gross receipts.[5] We therefore conclude that Bona Fide's subchapter S election was terminated in the same year it began—1960.

The last issue to be decided concerns the character of a distribution admittedly made by Bona Fide to Alfred in 1964. Respondent asserts that it is a dividend under sections 301 and 316. The record is barren of any reference to this distribution and on brief petitioners offer no alternative. In briefly confronting the issue, they merely claim that since Bona Fide was a subchapter S small business corporation the distribution was not a dividend. We find this effort totally unsatisfactory. During the year 1964 Bona Fide was not a valid subchapter S small business corporation, as pointed out above; the election to be treated under the small business provisions was involuntarily terminated in 1960. Nor have petitioners shown a subsequent valid election, and therefore we must conclude that in 1964 Bona Fide was not entitled to be treated as a subchapter S corporation. Absent an effective election, the sole argument made by petitioners regarding receipt of a dividend is totally without a foundation. Moreover, even had there existed a valid election in 1964, the individual petitioner's naked assertion that existence of subchapter S status precludes dividend treatment of the distribution received by him falls far short of satisfying the burden of proof that he must meet in order to prevail. Rule 32, Tax Court Rules of Practice.

*Decisions will be entered under Rule 50.*

---

[5] Petitioners' attempt to include the escrow payments for taxes and insurance also appears to be ill founded. See *Citizens Bank* v. *Davisson*, 229 U.S. 212 (1913) ; *Norbury Sanatorium Co.*, 9 T.C. 586 (1947). Having decided that it is improper for Bona Fide to include in gross receipts the unreceived purchase price of property sold, the question as to the includability of the escrow payments is never reached. Even were we to permit their inclusion in gross receipts, the interest factor easily exceeds 20 percent of "gross receipts."