I. J. MARSHALL AND CLARIBEL MARSHALL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

FLORA H. MILLER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6756–70—6758–70. Filed May 21, 1973.

*James M. Parker*, for the petitioners.
*Charles H. Powers*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in the Federal income taxes of petitioners I. J. Marshall and Claribel Marshall for the taxable years 1967 and 1968 in the amounts of $819.06 and $10,113.09, respectively. Respondent determined deficiencies in the Federal income taxes of petitioner Flora H. Miller for the taxable years 1965 through 1968 as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 6758–70 | 1965 | $1, 152. 30 |
| 6758–70 | 1966 | 2, 066. 79 |
| 6757–70 | 1967 | 665. 33 |
| 6757–70 | 1968 | 497. 39 |

The issue for decision is whether more than 20 percent of the gross receipts of Realty Investment Co. of Roswell, Inc., for its fiscal year 1968 was passive investment income within the meaning of section 1372(e)(5), I.R.C. 1954,[1] so as to terminate its election under section 1372(a) not to be subject to corporate income tax with the result that each of petitioners, its shareholders, is not entitled to a pro rata deduction of its fiscal year 1968 operating loss.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners I. J. Marshall and Claribel Marshall, husband and wife, resided at Roswell, N. Mex., at the time they filed their petition in this case. They filed joint Federal income tax returns for their taxable years 1967 and 1968 with the district director of internal revenue at Albuquerque, N. Mex.

Petitioner Flora H. Miller resided in Roswell, N. Mex., at the time she filed her petition in this case. She and her late husband filed joint Federal income tax returns for the taxable years 1965 and 1966, and she filed a separate Federal income tax return as a widow with dependent child for the taxable years 1967 and 1968 with the district director of internal revenue at Albuquerque, N. Mex.

Realty Investment Co. of Roswell, Inc. (Realty), is a corporation organized under the laws of the State of New Mexico on June 30, 1960. Realty kept its books and reported its income on the basis of a fiscal year ended June 30. It filed its Federal income tax returns as a regular corporation through its fiscal year ended June 30, 1967. Realty filed an election to be taxed as a small business corporation under the provisions of subchapter S of the Internal Revenue Code of 1954, as amended, to be effective for its taxable year commencing July 1, 1967. This election was accepted by respondent as being in compliance with applicable law.

Realty is authorized under its articles of incorporation to conduct a small loan business; insurance agency; discount purchase of sales contracts other than motor vehicle sales contracts; discount purchase of promissory notes, secured and unsecured; make direct loans over $1,000; make direct loans under $1,000 at general interest rates; conduct a real estate brokerage business, including the operation, development, handling, management, and sale of real property; and to operate in any business activity which the board of directors deemed necessary and proper in connection with its primary objects and purposes.

---

[1] All references are to the Internal Revenue Code of 1954, unless otherwise indicated.

Small loan license No. 33 which Realty had held throughout its corporate existence was in good standing during its fiscal year ended June 30, 1968.

Realty on the small business corporation income tax return (Form 1120–S) which it filed for its fiscal year 1968, reported gross receipts of $79,028.06 which consisted of the following items:

(a) Small loan department:

| | | |
|---|---:|---:|
| Interest earned | $35, 938. 67 | |
| Default and deferment charges | 2, 509. 99 | |
| Life insurance premiums | 3, 562. 48 | |
| Filing and recording fees | 155. 62 | |
| | | $42, 166. 76 |

(b) Real estate department:

| | | |
|---|---:|---:|
| Rentals received | 12, 297. 25 | |
| Commissions earned | 5, 299. 86 | |
| Interest income | 14, 731. 01 | |
| Discounts earned | 572. 51 | |
| Escrow fees | 105. 78 | |
| | | 33, 006. 41 |

(c) Rental income—office building:

| | | |
|---|---:|---:|
| Rentals received | 1, 678. 00 | |
| Miscellaneous income | 63. 30 | |
| | | 1, 741. 30 |

(d) Farnsworth Building:

| | | |
|---|---:|---:|
| Rentals received | | 1, 321. 03 |
| (e) Oil and gas royalties | | 792. 56 |
| Total | | 79, 028. 06 |

During its fiscal year 1968 Realty received repayment of loans in the amount of $288,129.79.

During its fiscal year ended June 30, 1968, Realty, through its small loan department, made installment loans to customers in amounts ranging from $100 to $1,000. There were approximately 500 such loans outstanding as of June 30, 1968. The interest income in the amount of $35,938.67 reported on Realty's income tax return from the small loan department was interest received on its loans to customers in amounts of $1,000 or less which were outstanding during its fiscal year 1968. The $2,509.99 in "default and deferment charges" reported on its return was additional interest for borrowers who wished to defer their payments plus fees charged to borrowers who had defaulted or had made a late payment.

The $14,731.01 interest income reported by Realty from its real estate department was the amount it received as interest on mortgages it took from purchasers of houses it sold less the interest it paid on the mortgages it assumed when it purchased the houses. This difference arose because Realty would purchase a house and assume a mortgage which the seller had on the house with an interest rate of 4 or 4½ percent

and then sell the house and take back a mortgage from the purchaser at an interest rate of 7 or 7½ percent. The $572.51 reported by the real estate department of Realty as discounts earned represents deferred-payment charges and extra interest paid when an installment payment on a mortgage was not timely made. The $12,297.25 in rental income reported by Realty from its real estate department was the rentals it received from tenants of 24 houses it owned in its fiscal year 1968. Realty also received rental income in its fiscal year 1968 of $1,678 from rentals of space in an office building. Realty attempted to keep its rental properties in good condition and collected the rents from these properties.

Realty was the lessee for a term of 11 years of the Farnsworth Building which prior to its fiscal year 1968 it sublet to the Federal Government at an annual rental of $13,210.30. Realty renovated the building prior to the sublessee's taking possession and received the amount of $13,210.30 in the first year of the sublease in addition to the first year's rent. Realty, on its books, treated this $13,210.30 as an advance rental, proratable over a 10-year period. The rental income from the Farnsworth Building reported by Realty for its taxable year ended June 30, 1968, in the amount of $1,321.03 consisted solely of the pro rata part of the entire $13,210.30 it had received in the first year it sublet the Farnsworth Building to the Federal Government. The Government vacated the Farnsworth Building prior to Realty's fiscal year 1968 and Realty received no rental payments on the building in that year.

The Form 1120-S filed by Realty for its fiscal year 1968 disclosed a loss from operations in the amount of $90,404.32. On Schedule K of the Form 1120-S, shareholder's share of income, the following shares of undistributed net operating loss were shown:

| | |
|---|---|
| I. J. Marshall | ($44, 599. 43) |
| Flora H. Miller | (44, 599. 43) |
| P. L. Duncan | (1, 205. 46) |

On the 1968 Federal income tax return filed by I. J. and Claribel Marshall, they claimed a deduction for an ordinary distributive loss realized from Realty in the amount of $44,599.43.

Flora H. Miller, on her income tax return for the year 1968 showed a distributive loss of $44,599.43 from Realty which loss was claimed as an ordinary deduction to the extent of $7,395.76.

On February 15, 1969, Flora H. Miller filed an Application for Tentative Loss Carryback Adjustment covering the taxable years 1965, 1966, and 1967, and based on the unused portion of the 1968 claimed distributive loss from Realty, was granted a tentative allowance resulting in refunds in the full amount of the tax paid for such years,

plus interest as provided by law. The refunds were for tax (exclusive of interest) in the following amounts for the years indicated:

| | |
|---|---|
| 1965 | $1,152.30 |
| 1966 | 2,066.72 |
| 1967 | 665.33 |

Respondent in his notice of deficiency determined that each petitioner was not entitled to deduct a pro rata share of the loss of Realty for the fiscal year ended June 30, 1968, because Realty "is not eligible to report its income as a tax option corporation under the provisions of section 1372(a)." Because of disallowing the claimed loss deduction to Flora H. Miller respondent determined a deficiency in her income tax for each of the years 1965, 1966, and 1967 in the amount previously tentatively allowed based on her loss carryback claim.

OPINION

Section 1372(e)(5),[2] applicable to the years here in issue, provides that except in the first or second year of active conduct by a corporation of any trade or business, its election to be taxed as a small business corporation under subchapter S will terminate if it has gross receipts more than 20 percent of which is passive investment income. This section further states (sec. 1372(e)(5)(C)) that "for purposes of this paragraph, the term 'passive investment income' means gross receipts derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom)."

---

[2] SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION.
  (e) TERMINATION.—

  \*  \*  \*  \*  \*  \*  \*

  (5) PASSIVE INVESTMENT INCOME.—
    (A) Except as provide in subparagraph (B), an election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is passive investment income. Such termination shall be effective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation.
    (B) Subparagraph (A) shall not apply with respect to a taxable year in which a small business corporation has gross receipts more than 20 percent of which is passive investment income, if—
      (i) such taxable year is the first taxable year in which the corporation commenced the active conduct of any trade or business or the next succeeding taxable year; and
      (ii) the amount of passive investment income for such taxable year is less than $3,000
    (C) For purposes of this paragraph, the term "passive investment income" means gross receipts derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom).

Petitioners' first contention is that during Realty's fiscal year ended June 30, 1968, it had gross receipts in the total amount of $367,157.84 composed of the $79,028.06 reported as gross income on its 1968 return plus the $288,129.78 which it received in its fiscal year 1968 as repayment of loans and that the total amount of interest, rent, and royalty income it received in 1968 is less than 20 percent of its gross receipts of $367,157.84.

In the alternative petitioners contend that Realty's interest income, both from its small loan business and its real estate business should not be considered as "passive investment income" within the meaning of section 1372(e)(5) since this interest was derived from the active conduct of its small loan and real estate business. It is petitioners' position that if we accept their contention with respect to the definition of "passive investment income," Realty's "passive investment income" for its fiscal year 1968 was less than 20 percent of the gross receipts of $79,028.06 reported as gross income on its return since the amount of $1,321.03 which Realty reported as rentals received from the Farnsworth Building was not in fact rentals.

Respondent takes the position that the $288,129.78 of repayment of loans which Realty received in its fiscal year 1968 is not properly a part of its gross receipts within the meaning of section 1372(e)(5), that under the definition of "passive investment income" contained in section 1372(e)(5)(C), Realty's interest, rent, and royalty income are all "passive investment income," and finally, that even if Realty's interest income were held not to be "passive investment income" within the meaning of section 1372(e)(5), Realty's rental income exceeded 20 percent of the $79,028.06 of gross receipts which it reported on its return as gross income since the prepaid rental of the Farnsworth Building was properly includable as rental income in making the computation of Realty's rental income for its fiscal year 1968.

The term "gross receipts" used in section 1372(e)(5)(C) is not defined in the Revenue Code. However, respondent, by regulation (sec. 1.1372–4(b)(5)(iv), Income Tax Regs.),[3] has defined this term

---

[3] Sec. 1.1372–4(b). *Methods of termination*—* * *

    *    *    *    *    *    *    *

(5) *Passive investment income*—* * *

    *    *    *    *    *    *    *

(iv) *Gross receipts.* (a) The term "gross receipts" as used in section 1372(e) is not synonymous with "gross income". The test under section 1372(e)(4) and (5) shall be made on the basis of total gross receipts, except that, for purposes of section 1372(e)(5), gross receipts from the sales or exchanges of stock or securities shall be taken into account only to the extent of gains therefrom. The term "gross receipts" means the total amount received or accrued under the method of accounting used by the corporation in computing its taxable income. Thus, the total amount of receipts is not reduced by returns and allowances, cost, or deductions. For example, gross receipts will include the total amount received or accrued during the corporation's taxable year from the sale or exchange

to mean the total amount received or accrued under the method of accounting used by the corporation in computing its taxable income with the exception of amounts received in certain nontaxable sales or exchanges, and amounts received as a loan, as a repayment of a loan, as a contribution to capital, or on the issuance by the corporation of its own stock. Petitioners, relying primarily on *Valley Loan Association* v. *United States*, 258 F. Supp. 673 (D. Colo. 1966), contend that respondent's regulation is invalid in excluding from the definition of gross receipts amounts received as repayment of a loan. In the *Valley Loan Association* case, the court held respondent's regulation to be invalid as applied to a finance or loan company, giving as its reasons therefor the following (258 F. Supp. at 675–676) :

There is nothing in subchapter S which specifically excludes from gross receipts the amount received for repayment of such loans.

It is obvious that if the defendant's position is correct, finance or loan companies are excluded from the benefits of subchapter S for their gross receipts under the defendant's theory are for all practical purposes limited to receipts of interest.

We find nothing in subchapter S or in its legislative history that indicates that congress had any such intent. The act itself indicates that congress intended § 1372(e)(5) to apply only to personal holding company income, for that is the subheading of that particular section. Since 1938 loan companies engaging in activities similar to those of the plaintiff have been excluded by congress from the definition of a personal holding company (see Title 26 U.S.C. § 542 and the legislative history therein). In the court's opinion the section as written indicates no intent to exclude loan and finance companies from the benefits of subchapter S.

Since subchapter S does not expressly or by implication exclude from gross receipts the repayments of the principal of the plaintiff's loans and installment contracts, the court concludes that Treasury Regulation 1372–4 insofar as the defendant construes it to exclude from gross receipts the repayment of the loans made and installment contracts acquired by the plaintiff in the ordinary course of its loan business is contrary to the congressional act and congressional intent as evidenced by the act and is therefore invalid as applied to the plaintiff's operations. Commissioner of Internal Revenue v. Netcher, 7 Cir., 143 F. 2d 484, cert. denied 323 U.S. 759, 65 S.Ct. 92, 89 L.Ed. 607 (1944).

This Court, in *Buhler Mortgage Co.*, 51 T.C. 971 (1969), affirmed per curiam 443 F. 2d 1362 (C.A. 9, 1971), held that the specific exclusion of the gain on the sale of securities by security dealers by section 543(a)(2) from personal holding company income did not justify the implication of any such exclusion under the provisions

(including a sale or exchange to which section 337 applies) of any kind of property, from investments, and for services rendered by the corporation. However, gross receipts does not include amounts received in nontaxable sales or exchanges (other than those to which 337 applies), except to the extent that gain is recognized by the corporation, nor does that term include amounts received as a loan, as a repayment of a loan, as a contribution to capital, or on the issuance by the corporation of its own stock.

of section 1372(e)(5) since there was no statutory exclusion in that section. Therefore, we have taken the contrary position to the holding of the court in *Valley Loan Association* v. *United States, supra,* that the exclusion of a corporation from the definition of personal holding company under the section of the Code dealing with the personal holding company tax is a basis for a holding that such corporation does not come within the provisions of section 1372(e)(5) with respect to termination of its election under section 1372(a). Since we disagree with the underlying basis of the holding in the *Valley Loan Association* case, we do not view it as adequate authority for holding the provisions of respondent's regulation that gross receipts do not include a repayment of a loan invalid. We consider it necessary to view this regulation in the light of the statute which it is implementing and unless we find it unreasonable or plainly inconsistent with the statute, its validity should be upheld, *Commissioner* v. *South Texas Co.,* 333 U.S. 496 (1948). This regulation was adopted in December 1959, T.D. 6432, 1960-1 C.B. 317, 329, shortly after the enactment of subchapter S and insofar as the definition of gross receipts is concerned has remained unchanged even though section 1372(e)(5) was amended by Pub. L. 89-389 (Apr. 14, 1966) to change the heading of paragraph (5) from "personal holding company income" to "passive investment income," and to exclude from the termination of election provisions of section 1372(e)(5) for 2 years new corporations which elect to file their income tax returns under subchapter S. See H. Rept. 1285, 89th Cong., 2d Sess. (1966) to accompany H.R. 12752, 1966-1 C.B. 532-533, 541.

There is added reason for not setting aside, except for weighty reasons, a regulation which has been in continued effect for a period of time during which the statute has been reenacted and amended without disapproval of the regulation. *Estate of Richard R. Wilbur,* 43 T.C. 322 (1964), and cases there cited.

In *Alfred M. Sieh,* 56 T.C. 1386, 1391, 1392 (1971), aff'd. —— F. 2d —— (C.A. 8, 1973), we held the provisions of section 1.1372-4(b)(5) (iv) of the Income Tax Regulations that "gross receipts" means the total amount received or accrued under the method of accounting used by the corporation in computing its taxable income to be a valid interpretation of the statute. In that case the taxpayer was contending that gross receipts of a corporation which reported its income on a cash basis should include the total price that corporation had received for property sold and not merely the payments on principal received, and that amounts paid into escrow for the payment of insurance and taxes should be included in gross receipts. We held that only the amount of principal payments received during the taxable year was properly

includable in the gross receipts of a taxpayer employing the cash method of accounting, and that respondent's regulation providing to this effect was a valid interpretation of the statute. While the portion of the regulation with which we were concerned in the *Sieh* case differs from the portion with which we are concerned in the instant case, our holding in that case lends support to the reasonableness of the provision of section 1.1372–4(b)(5)(iv), Income Tax Regs., that repayments of loans are not gross receipts. The repayment of a loan is never considered a receipt either under the cash or accrual method of accounting in computing a corporation's taxable income. The items normally considered as a part of gross receipts are the items listed in respondent's regulation as comprising those receipts, not reduced by returns and allowances, costs, or deductions.

In our view the exclusion of repayments of loans from gross receipts under the provisions of section 1372(e)(5) is a reasonable interpretation of the statute. Certainly this interpretation is not unreasonable or plainly inconsistent with the statute. We therefore hold respondent's regulations to be valid and conclude that the $288,129.78 received by Realty as repayment of loans is not properly a part of its gross receipts within the meaning of section 1372(e)(5).

Petitioners base their alternative contention that Realty's interest income, both from its small loan department and its real estate department, should not be considered as "passive investment income" within the meaning of section 1372(e)(5) primarily on the holding of *House* v. *Commissioner*, 453 F. 2d 982 (C.A. 5, 1972), reversing a Memorandum Opinion of this Court. The Fifth Circuit in the *House* case, held that the term "interest" as used in section 1372(e)(5) did not include interest which would not be a part of the "personal holding company income" of a corporation and that a finance company not subject to personal holding company tax, because of the provisions of section 542(c)(6), could have no "personal holding company income." That court stated that a lending company such as the taxpayer in that case was specifically excluded from the definition of a personal holding company and therefore the fact that more than 20 percent of its gross receipts was from interest did not cause it to have "personal holding company income." That court concluded from these statements that such a corporation likewise could not have "personal holding company income" or "passive investment income" within the meaning of section 1372(e)(5). The Fifth Circuit in that case pointed out that the opinion of this Court had relied on our opinion in *Buhler Mortgage Co., supra,* as being controlling but in its view that case was not applicable. In our view the Fifth Circuit misread our opinion in *Buhler Mortgage Co.,*

*supra.* The Fifth Circuit looked only to that portion of our opinion which referred to the parties having agreed on "the amount of personal holding company income earned by petitioner during the year in issue" and did not analyze the basis of our holding that the election of the taxpayer in that case to be taxed as a small business corporation had terminated under section 1372(e)(5). In *Buhler Mortgage Co.*, we explained our holding as follows (51 T.C. at 977–979):

In support of its position, petitioner cites the legislative history of the subchapter S provisions, specifically S. Rept. No. 1007, 89th Cong., 2d Sess. (1966), 1966-1 C.B. 532, which states that the subchapter S provisions were passed to allow only small businesses actively engaged in a trade or business to make the election. Those businesses with large amounts of passive income were not to have the option of electing subchapter S treatment. Consequently, Congress denied the election to those corporations which had large amounts of investment-type income such as royalties, rents, dividends, interest, annuities, and profits from the sales or exchanges of stock and securities. From this, petitioner concludes that since it had to expend a great deal of effort and engage in many activities in order to produce the notes which it sold to Bankers and Acacia, such proceeds should not be considered of a passive nature. Petitioner concludes that the proceeds are thus not within the definition of the Code or the regulations as personal holding company, or passive income. [Fn. omitted.]

In support of this position petitioner cites section 1.543–1(b)(5)(ii), Income Tax Regs., which excludes security dealers' sales of securities from personal holding company income.

Though we agree with petitioner that the subchapter S provisions were not intended to include corporations with large amounts of investment-type income (as opposed to those actively engaging in trade or businesses) we cannot find that the nature of the income changes simply because the corporation earning it must engage in many activities and exert a great deal of effort in doing so. The standard used by the Code and the regulations does not permit us to look behind the normal characterizations of a corporation's receipts in order to classify them as active or passive. If this were not so, we can only guess at what criteria might be properly used to say, e.g., that a rent item was "active" because the tenant was such poor pay, or that a dividend item was "active" because a stockholder's bill had to be brought to force the directors to declare and pay it. We conclude that the test established is one which requires us to look only to the plain meaning of the words used to define the income, not to the activity required to produce it. Secured promissory notes are clearly within the meaning of "securities" as that term is employed by section 1372(e)(5).

The evidence in the instant case indicates that the interest income which petitioner collected on unsold deed-of-trust notes required a considerable amount of its time. However, we do not look behind this interest income for the effort expended in collection before calling it personal holding company income, and petitioner does not ask us to do so. We see no persuasive reason for treating proceeds from sales of notes any differently.

\*     \*     \*     \*     \*     \*     \*

Petitioner's citation of section 1.543–1(b)(5)(ii), Income Tax Regs, is not helpful. That section, exempting gain on sales of securities by securities dealers from personal holding company income, was promulgated in connection with sec-

tion 543 (a) (2) of the Code which read (prior to its amendment in 1964, Pub. L. 88–272) as follows:

SEC. 543. PERSONAL HOLDING COMPANY INCOME.

(a) GENERAL RULE.—For purposes of this subtitle, the term "personal holding company income" means the portion of the gross income which consists of:

\* \* \* \* \* \* \*

(2) STOCK AND SECURITIES TRANSACTIONS.—Except in the case of regular dealers in stock or securities, gains from the sale or exchange of stock or securities.

Thus the above exception was granted only by virtue of a specific provision of the Code. No similar provision exists under the subchapter S provisions, and in the absence of any such statutory exclusion, we cannot imply any exclusion, for petitioner's benefit by judicial fiat.

In our view we specifically held in *Buhler Mortgage Co.* that the fact that active efforts might have been exerted to produce interest or rental income did not cause that income not to be "personal holding company income" or "passive investment income" under the provisions of section 1372 (e) (5). We further held that the fact that an exemption of certain income or a certain type of income from the provisions of the personal holding company income under section 543 did not cause a similar exclusion to exist under section 1372 (e) (5). In our view our holding in *Buhler Mortgage Co.* which has now been affirmed per curiam by the U.S. Court of Appeals for the Ninth Circuit (443 F. 2d 1362), cannot be reconciled with the holding of the Fifth Circuit in *House* v. *Commissioner, supra.* We therefore respectfully decline to follow the Appeals Court's holding in the *House* case and conclude that interest and rental income are part of "passive investment income" even though the recipient of such interest or rental income may be actively engaged in a small loan or real estate business.

Since we have concluded that Realty's election to come within the provisions of subchapter S was terminated under section 1372 (e) (5), since in its fiscal year 1968 more than 20 percent of its gross receipts was from interest which by definition is "passive investment income" within the meaning of section 1372 (e) (5), we need not decide whether Realty had rental income which when added to the $792.56 of royalty income which petitioners conceded to be "passive investment income" within the meaning of section 1372 (e) (5) would constitute more than 20 percent of Realty's gross receipts for its fiscal year 1968. It is obvious from the figures we have found that the $12,297.25 of rentals received by the "Real Estate Department," plus the $1,678 of rental income received from the "office building" when added to the royalty of $792.56 do not exceed 20 percent of Realty's gross receipts for its fiscal year 1968. However, if the amount of $1,321.03 which Realty listed as

rental from the Farnsworth Building is added to the two items conceded to be rental income plus the royalty income which Realty had in its fiscal year 1968, the total is in excess of 20 percent of Realty's total gross receipts for that year.

Since we have concluded that the election of Realty to be taxed as a small business corporation under subchapter S terminated for its fiscal year 1968 because of the provisions of section 1372(e)(5), we hold that respondent properly disallowed the deductions of petitioners as shareholders of Realty for their pro rata share of the net operating loss of Realty for its fiscal year 1968. We therefore decide the only issue presented for our decision for respondent, but in order to reflect adjustments to which the parties have agreed,

*Decisions will be entered under Rule 50.*

Reviewed by the Court.

STERRETT, *J.,* concurring: I concur in the result reached by the majority because petitioner has failed to show that the interest received by Realty was not within the traditional concepts of "passive investment income." However, I do not believe that the term "interest" as used in section 1372(e)(5)(C) means that any interest, in all events, must be so classified. To so hold would be to accord a substantive meaning to the change in heading for subparagraph (5) when Pub. L. 89–389 changed the heading from "Personal Holding Company Income" to "Passive Investment Income." It seems to me that interest may not, under some circumstances, qualify as passive income. Cf. sec. 542(c)(6).