Jasper L. **HOUSE, Jr., and Edra F. House,**
**et al., Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REV-**
**ENUE, Respondent-Appellee.**

**No. 30640.**

United States Court of Appeals,
Fifth Circuit.

Jan. 5, 1972.

Charles F. Herring, Royce Jay Hailey, Jr., Small, Herring, Craig, Werkenthin & Shannon, Austin, Tex., for petitioners-appellants.

Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Div., Dept. of Justice, K. Martin Worthy, Chief Counsel, Internal Revenue Service, Michael B. Frosch, Thomas L. Stapleton, Joseph M. Howard, Virginia M. Hopkinson, Attys., Tax Division, Department of Justice, Washington, D. C., for respondent-appellee.

Before O'SULLIVAN,* THORNBERRY and DYER, Circuit Judges.

O'SULLIVAN, Senior Circuit Judge:

Petitioners-appellants, Jasper L. House and his wife, were the substantial owners of several small loan corporations doing business in Waco and other cities of Texas.[1] They appeal from a Tax Court decision which held that the involved several corporations had, in the tax years involved—1963 and 1964—lost their status as Small Business Corporations, thereby losing any entitlement to the tax benefits of Subchapter S of the Internal Revenue Code. By that Subchapter, any corporation which met the definition of a Small Business Corporation could elect not to be subject to the income taxes ordinarily payable by a corporation, but its otherwise taxable earnings would be reportable as income in the returns of its shareholders. 26 U.S.C. §§ 1373 and 1377. The House corporations each made such an election. The required qualifications for such election and the tax benefits flowing therefrom, are contained in Subchapter S—Election of Certain Small Business Corporations as to Taxable Status—of the Internal Revenue Code of 1954, 26 U.S.C. §§ 1371–1377. For the tax years here involved, the corporations owned and operated by appellants met the prescribed qualifications unless their election to be treated as Small Business Corporations had been terminated, as hereinafter discussed.

The contest before us arises from the Commissioner's determination that the corporations' said elections were terminated by application of § 1372(e) (5) of the Internal Revenue Code of 1954. As it read in the tax years involved, that section provided:

"(5) **Personal holding company income.**

An election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is derived from royalties, rents, dividends, *interest*, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this para-

---

* Senior U.S. Circuit Judge, Sixth Circuit, sitting by designation.

1. The companies operated under a Texas Regulatory Loan Act, licensed to make loans not in excess of $100.

graph only to the extent of gains therefrom). Such termination shall be effective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation." (Emphasis supplied.)

The Commissioner's ruling was the product of a finding that more than 20 percent of the income of each of the involved corporations was derived from *interest* earned by them, and that the mentioned section applied to such corporations, without reference to whether all, or any part, of their income was "personal holding company income." It held that the § 1372(e) (5) reference to "personal holding company income" was without meaning as narrowing the reach of the word "interest," also contained in the involved section. The deficiencies assessed against appellants arose primarily from their having taken as deductions, in computing their taxable income, shares of the operating losses experienced by the respective corporations. Under § 1374, such deductions would be proper, unless the said elections of these companies had been terminated. The arithmetic involved is set out in the Tax Court opinion and the correctness of it is not challenged, if the underlying rulings are sustainable.

Appellants' brief sets out the following for its Statement of Issues for Review.

"A. The Tax Court erred in.finding that lending and finance companies actively engaged in the business of making loans are subject to the subchapter-S termination provisions of section 1372(e) (5) of the Internal Revenue Code.

"B. The Tax Court erred in finding that acquisition charges are 'interest' within the meaning of section 1372(e) (5) of the Internal Revenue Code.

"C. The Tax Court erred in failing to find that 'Gross Receipts,' within the meaning of Section 1372(e) (5) of the Internal Revenue Code, includes the repayment of principal."

We are persuaded that appellants' position in Statement A above should be sustained. If the Tax Court had correctly ruled that Section 1372(e) (5) of the Code had terminated the status of the involved corporations as small business corporations, its findings on issues B and C would also have been correct.

We reverse.

The taxpayer-appellants' position is that the proscriptions of § 1372(e) (5) had to do only with "personal holding company income"; that none of their small loan companies was a "personal holding company"; and that accordingly none of them was receiving any "personal holding company" income, whether from "interest" or otherwise. They point out that at the time here involved, the type of business carried on by the corporations owned by them was specifically excluded from the statutory definition of a "personal holding company" by § 542 of the Internal Revenue Code, 26 U.S.C. § 542. It is provided in Subsection (c) thereof:

"(c) Exceptions.

The term 'personal holding company' as defined in subsection (a) does not include—

\* \* \* \* \* \*

(6) a lending or finance company if—

(A) 60 percent or more of its ordinary gross income (as defined in section 543(b) (1)) is derived directly from *the active and regular conduct of a lending or finance business.*" (Emphasis supplied.)

Each of the corporations was engaged in "the active and regular conduct of a lending or finance business." The Commissioner does not challenge appellants' assertion that none of these corporations was a "personal holding company" and does not appear to challenge their like assertion that none of the corporations was enjoying any "personal holding company income" during the years involved.

It is appellants' position that the words "personal holding company income" were deliberately employed by Congress to identify the kind of income

that a small business corporation would have to enjoy in a specified percentage of its total income in order to lose tax-wise, its status as such a corporation. They argue that expression of such Congressional purpose was reinforced by the 1966 Act which modified the language of § 1372(e) (5) to read:

"(5) **Passive investment income—**

(A) Except as provided in subparagraph (B), an election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts *more than 20 per cent of which is passive investment income*. Such termination shall be effective for the taxable year of the corporation in which .it has gross receipts of such amount, and for all succeeding taxable years of the corporation. (Emphasis supplied.)

\*　\*　\*　\*　\*　\*

"(C) For purposes of this paragraph, the term 'passive investment income' means gross receipts derived from royalties, rents, dividends, *interest*, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom)." (Emphasis supplied.)

We read the government's position to be that, as a matter of statutory construction, the words "personal holding company" and "passive investment" as applied to "income" are to be ignored and that only the word "interest" is to be given any meaning. The government does not advise what legislative purpose was served by the Congress' use of the words "personal holding company income" and "passive investment income" in the relevant statute. These words were the words of Congress and not those of a compiler of the Code Sections.

The government variously states its position in its address to us as follows:

"The inquiry under Section 1372(e) (5) is not to whether a given corporation *is or is not a personal holding company* under Section 542 but is to whether it has the types of income enumerated in Section 1372(e) (5), and *referred to there as personal holding company income*, in sufficient amounts as to require termination of its Subchapter S status."

\*　\*　\*　\*　\*　\*

"The language of Section 1372(e) (5) is clear. It states that the Subchapter S status of a company will terminate if more than 20 percent of its gross receipts in a taxable year is derived from interest. There is nothing vague or confusing in such language. *The statute makes no 'passive' interest versus 'active' interest distinction. It just says interest*. No reference is made in the statute to the personal holding company tax provisions, and there is no legislative history indicating that such a reference was intended. The test imposed is an objective, mathematical one."

\*　\*　\*　\*　\*　\*

"Thus, whether or not the interest received by loan companies *be considered 'active' or 'passive' income*, it is still interest, and interest is specifically included in the Subchapter S termination provision of Section 1372(e) (5) and in the definitions of personal holding company income contained in Section 543."

The fault of the foregoing lies in the fact that the Congress did use "personal holding company" and "passive investment" in identifying the kind of income, whether from interest or otherwise, that would destroy the subchapter S election if received in sufficient quantity.

The Tax Court opinion spends little time arguing for its conclusion, apparently satisfied that its decision in Buhler Mortgage Co., 51 T.C. 971 (appeal pending 1969) is factually analogous and that its rule of law is sound and of sufficient relevance to be controlling here.

We do not agree. We do not find *Buhler's* facts or the legal questions involved sufficiently apposite to support the Tax Court's conclusion here. Excerpts from it portray its lack of analogy. This is its "Ultimate Finding of Fact":

"Petitioner's proceeds from the sales of the deed of trust notes were within the definition of *'personal holding company income'* under section 1372(e) (5) of the Code, but since there were no gains from such sales, no part of such proceeds constituted 'gross receipts' to be taken into account under that section." 51 T.C. at 975 (Emphasis supplied.)

The taxpayer in that case was in the mortgage business and part of its income was earned by obtaining deeds of trust from borrowers and discounting them with various banks. The opinion recites:

"Petitioner usually sold the notes to the companies at a small discount, and was granted the right to collect a service fee for servicing the obligations, i.e., collecting the payments called for by the notes, paying the taxes, and generally doing the things necessary to keep any notes from being in default. The notes involved were generally of a long-term nature, the 30-year note shown above being of average length." 51 T.C. at 973.

The taxpayer contended that what earnings were realized from the above activity were not "personal holding company income" and should have been added to its gross receipts for the purpose of determining whether that portion of its income which was admittedly from "personal holding income" was less than 20 percent of its gross receipts. The Tax Court held that the transactions whereby the taxpayer negotiated the notes which it had obtained was the legal equivalent of a sale of securities and under section 1372(e) (5) constituted "personal holding company income" which was more than 20 percent of its gross receipts. Stated another way in its opinion, the question for decision was:

"If the proceeds are included as part of petitioner's gross receipts for each year, its *personal holding company* income was less than 20 percent of its gross receipts. If the proceeds are excluded from gross receipts, then petitioner's *personal holding company income* was more than 20 percent of its gross receipts and its election terminated." 51 T.C. at 976. (Emphasis supplied)

In *Buhler,* the Tax Court began its opinion with the observation,

"Under section 1372(e) (5) of the Code, a corporation loses its election to be taxed under subchapter S of the Code if more than 20 percent of its gross receipts constitutes 'personal holding company income.' " 51 T.C. at 976.

Thus, the Court made it clear that the section's caption, "Personal holding company income" controlled the entire section's meaning. We are of the view that if *Buhler Mortgage Co.* has any significance here, it supports the position we take.

The appellants make reference to § 542 of the Code to support their claim of exemption from the status of a "personal holding company." The government says this cannot be done, arguing that section 1372(e) (5) is complete and clear and "needs no reference to the Code section having to do with" personal holding companies. The difficulty with this position is that nowhere in subchapter S—especially section 1372(e) (5)—is there a definition of a "personal holding company," so reference to the relevant section of the code is necessary.

There is no impropriety in using Code section 542 to provide a definition of language employed in section 1372(e) (5). In Lansing Broadcasting Co. v. C. I. R., 427 F.2d 1014 (6th Cir. 1970), the Court was dealing with section 1372(e) (5) and also section 331(a) (1) of the Code. A critical question was whether a liquidating distribution following a sale of stock was personal

"holding company income," which included "sales or exchanges of stock." The taxpayer contended that the liquidating distribution was not derived from such a sale, but was "long term capital gain." The Sixth Circuit disposed of this contention as follows:

"The Treasury Regulations under Subchapter S provide that the provisions of Chapter 1 of the Code, which includes Section 331(a) (1), are applicable to Subchapter S unless 'inconsistent.' Section 1.1372–1(c). No inconsistency has been shown.

"Section 331(a) (1) of the Code and section 1372(e) (5) are therefore *in pari materia and should be construed together.*" 427 F.2d at 1016. (Emphasis supplied.)

We discern no valid reason forbidding our looking to Section 542 of the Code to determine whether taxpayers' income here was, or was not, "personal holding company income." A District Judge, in Valley Loan Ass'n v. United States, 258 F.Supp. 673 (D.Colorado, 1966), made some observations which, though possibly dictum, have some relevance here. Dealing with the question of whether repayments of loans should be considered as gross receipts, the District Judge said:

"It is obvious that if the defendant's position is correct, finance or loan companies are excluded from the benefits of subchapter S for their gross receipts under the defendant's theory are for all practical purposes limited to receipts of interest.

"We find nothing in subchapter S or in its legislative history that indicates that congress had any such intent. *The act itself indicates that congress intended § 1372(e) (5) to apply only to personal holding company income*, for that is the subheading of that particular section. Since 1938 loan companies engaging in activities similar to those of the plaintiff have been excluded by congress from the definition of a personal holding company (see Title 26 U.S.C. § 542 and the legislative history therein.) In the court's opinion the section as written indicates *no intent to exclude loan and finance companies from the benefits of subchapter S.*" 258 F.Supp. at 675–676. (Emphasis supplied.)

We are of the view that the words "personal holding company income" and "passive investment income" were deliberately employed by Congress to make clear its legislative purpose. The word "interest" cannot be read in isolation. To effect termination of subchapter S status the interest must be a part of "personal holding company income." It was not such; neither did the interest earned by a small loan company fit the words "passive investment income." We do no more than give purpose to the entire Congressional Act by our reversal of the Tax Court.

Subheadings on the respective sections of a statute will not be read as destroying the clear meaning of the body of the Act. Where, however, there is no collision involved, it is proper to consult both the section heading and the section's content to come up with the statute's clear and total meaning. We do not believe that proper statutory construction will permit the Commissioner to lift or isolate the word "interest" from its context to give it a meaning that does violence to Congressional purpose.

In United States v. Fisher, et al. 6 U. S. (2 Cranch) 358, 2 L.Ed. 304 (1804), Chief Justice Marshall said:

"It is undoubtedly a well established principle in the exposition of statutes, *that every part is to be considered,* and the intention of the legislature to be extracted from the whole. It is also true, that where great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the legislature be plain; in which case it must be obeyed." 2 L.Ed. at 313. (Emphasis supplied.)

See also, United States v. Palmer, 16 U.S. (3 Wheat.) 610, 4 L.Ed. 471, 477

(1818); and Smythe v. Fiske, 90 U.S. (23 Wall.) 374, 23 L.Ed. 47, 49 (1874). In Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 756, 44 L.Ed. 969, 978–979 (1899), the Court said:

> "On the very threshold, the theory that the tax is not on particular legacies or distributive shares passing upon a death, but is on the whole amount of the personal property of the deceased, is rebutted *by the heading, which describes what is taxed,* not as the estates of deceased persons but as 'legacies and distributive shares of personal property.'" 44 L. Ed. at 978–979. (Emphasis supplied)

In May v. Clay-Gentry-Graves Tob. Warehouse Co., 284 Ky. 502, 145 S.W. 2d 84 (1940), the language of the Kentucky Court of Appeals supports our view that meaning should be given to the section headings of a statute.

> "Also, it is permissible in order to solve such difficulties, and in the pursuit of the legislative intent, to take into consideration, not only the title to the act, but *likewise the headings of the section* if they are incorporated in the act, which, *as we have said, is the situation here.*
>
> \* \* \* \* \* \*
>
> "The text in Volume 25, R.C.L. 1006, section 247 says inter alia: 'Hence, it is an established rule in the exposition of statutes that the intention of the law-giver is to be deduced from a view of the whole, and of every part of the statute taken and compared together.' The long list of cited cases in note 8 to that excerpt confirms the entire absence of all dissent from that proposition. Advancing to more specific treatment of the question, the text on page 1031, section 267, of the same R. C.L. volume, *approves the right of the court in proper circumstances to resort to titles, headings of sections, and to the history of the litigation from its inception to its final passage as a means of ascertaining the intention of*

*the legislature . . . "* 284 Ky. at 505, 145 S.W.2d at 86. (Emphasis supplied.)

In 1 U.S.C. § 104, it is provided:

> "**§ 104. Numbering of sections; single proposition.**
>
> Each section shall be numbered, and shall contain, as nearly as may be, a single proposition of enactment. July 30, 1947, c. 388, § 1, 61 Stat. 633." 1 U.S.C. § 104.

The judgments of the Tax Court are vacated and the deficiencies assessed are set aside.