PAUL E. PUCKETT and RUTH V. PUCKETT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Puckett v. Commissioner
Docket No. 6976-72
United States Tax Court
T.C. Memo 1974-235; 1974 Tax Ct. Memo LEXIS 85; 33 T.C.M. (CCH) 1038; T.C.M. (RIA) 74235; September 10, 1974, Filed. Harvey G. Schneider, for the petitioners Jeffrey B. Talley, for the respondent FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined *86 the following deficiencies against the petitioners, Paul E. Puckett and Ruth V. Puckett: Year
Deficiency 1962
$10,001.66
1963
$ 4,949.40
Mutual concessions having been made, it remains to be decided whether First Finance Company, a corporation of which petitioner [1] was a shareholder, was entitled to elect to be taxed under Subchapter S of the Internal Revenue Code of 1954. [2]
FINDINGS OF FACT Certain facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner filed Federal income tax returns for the years ended December 31, 1962 and 1963 with the district director of internal revenue at Birmingham, Alabama. He was a resident of that city on the date of the filing of his petition to this Court. The petitioner and Kenneth W. Doehring of St. Louis County, Missouri each owned 50 percent of the outstanding stock of First Finance Company (Finance) throughout the period *87 under consideration. Finance, a corporation organized on May 21, 1962, under the laws of Tennessee, was a regulated loan company operated under the Tennessee Industrial Loan and Thrift Act. [3] During its fiscal years ended October 31, 1962 and 1963 it maintained a regular place of business at Memphis, Tennessee, sought customers, employed a full-time staff and can generally be said to have engaged actively in the operation of a lending and finance business, making loans to individuals, in amounts not exceeding $500 and generally secured by mortgages on household goods. At no time during the period now before us was Finance a personal holding company within the meaning of section 542. The clientele of First Finance Company were of a type who could not borrow at a commercial bank or a consumer type finance company. Earning a low income, highly mobile and often unemployed, the typical loan applicant could not be serviced without a thorough analysis of his financial status. Therefore, when a loan was applied for, a member of Finance's staff would interview the prospective borrower, eliciting as much information relevant to the latter's *88 ability and willingness to repay the loan as could be obtained in this manner. On the basis of what he had learned, the staff member would prepare an application on the customer's behalf which would then be referred to one of several credit reporting agencies; but because the credit agency's files could not be relied on to be current in all cases, the staff of Finance would make further independent verification of the pertinent data. The processing of a new obligation would consume approximately one hour of a staff member's time, while a loan renewal would require an investigation of about 30 to 40 minutes. Following this procedure, Finance accepted 50 to 60 percent of the applications it received. Under Tennessee Industrial Loan and Thrift Act [4] Finance was permitted: (i) To charge for services rendered and expenses incurred in connection with investigating the moral and financial standing of the applicant, security for the loan, investigation of titles and other expenses incurred in connection with the closing of any loan an amount not to exceed four dollars ($4.00) per each one hundred dollars ($100) of the principal amount loaned, and a proportionate amount for any greater *89 or lesser amount loaned, provided no charge shall be collected unless a loan shall have been made. Finance accordingly computed its service charges on the face amount of the loan, without regard to its duration or type.The service charges were computed in advance of the loan, were separately stated on the note signed by the borrower, and were not refundable in the event of prepayment. No service charge was made if the loan application was denied. During the taxable years ended October 31, 1962, and October 31, 1963, Finance's receipts (exclusive of repayment of principal) as reported on its books and records were as follows: Receipt Category
Year Ended 10/31/62
Year Ended 10/31/63 Interest
$ 966.52
$ 5,369.90
4% service charges (or industrial loan fees)
5,370.43
15,917.76
Delinquent charges
673.06
4,831.30
Accident & health insurance commissions
8,960.39
24,717.49
Fire insurance commissions
5,655.12
13,940.73
Miscellaneous -0-
2,454.00
Total receipts reported
$21,625.52
$67,231.18
Its income tax return filed for the fiscal year ended October 31, 1962 with the district director of internal revenue *90 at Nashville, Tennessee, disclosed a loss from operations in the amount of $29,111.93. Its return filed with the district director at St. Louis, Missouri, for the fiscal year ended October 31, 1963 indicated a loss from operations in the amount of $15,222.10. Pursuant to section 1372(a), a timely election was made to have Finance taxed under Subchaper S beginning with the first short period ended October 31, 1962. At no time during the taxable years at issue was that election ever revoked within the meaning of section 1372(e) (2) and the regulations thereunder; and during the taxable years at issue the said corporation qualified as a "small business corporation" to the extent of the requirements in section 1371(a). On his joint income tax returns for the years 1962 and 1963 petitioner claimed deductions in the amount of $14,555.97 and $7,611.05 as his distributive share of the loss incurred by Finance during its taxable years ended October 31, 1962 and 1963, respectively. On June 20, 1972, respondent issued a timely statutory notice of deficiency to petitioner determining deficiencies in income taxes in the amounts of $10,001.66 for the year 1962 and $4,949.40 for the year *91 1963. The deficiency as determined in the statutory notice for the year 1962 is based upon respondent's determination (1) that Finance's election to be taxed under Subchapter S had been terminated under section 1372(e) (5) and (2) that the addition to reserve for bad debts claimed by Finance was not allowable to the extent of $9,999.49. The entire amount of the deficiency as determined in the statutory notice for the year 1963 was based upon the respondent's determination that the election of Finance not to be taxed under Subtitle A, Chapter 1, had been terminated under section 1372(e) (5). ULTIMATE FINDING OF FACT First Finance Company's election under section 1372(a) for its fiscal years ended October 31, 1962 and 1963 was not terminated under section 1372(e) (5). OPINION Petitioner has raised three issues of law: (1) whether the receipt of interest by a corporation actively engaged in the business of making small loans can cause the termination of its Subchapter S election under section 1372(e) (5) where that corporation is not a personal holding company as that term is defined in section 542; (2) whether service charges such as those authorized under the Tennessee *92 Industrial Loan and Thrift Act constitute interest within the meaning of section 1372(e) (5); (3) whether the return of the principal of loans is to be included within gross receipts within the meaning of section 1372(e) (5). In our disposition of this case, we need resolve only the first of the three issues. It having been stipulated that Finance was not a personal holding company within the definition of section 542 during its taxable years ended October 31, 1962 and 1963, we hold that its election under section 1372(a) was not terminated by reason of its receipt of interest, under section 1372(e) (5), House v. Commissioner, 453 F.2d 982 (C.A. 5, 1972), reversing a Memorandum Opinion of this Court. We hasten to add that this decision does not reflect the thinking of this Court on the issue resolved hereby. See Buhler Mortgage Co., 51 T.C. 971 (1969), affd. per curiam, 443 F.2d 1362 (C.A. 9, 1971); I. J. Marshall, 60 T.C. 242 (1973); Joseph B. Zychinski, 60 T.C. 950 (1973). [5] Most recently in Kenneth W. Doehring, T.C. Memo 1974-234 a case arising out the instant facts, we held that Finance's *93 election under section 1372(a) for the years in issue had terminated under section 1372(e) (5). However, as an appeal from the case at bar would be made to the Fifth Circuit, we consider the precedent established by that circuit in House to be controlling, Jack E. Golsen, 54 T.C. 742 (1970), affd. 445 F.2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940 (1971). Decision to be entered under Rule 155. Footnotes
1. Hereafter "petitioner" shall refer to Paul E. Puckett. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as applicable to the years under consideration. ↩
3. Tennessee Code §§ 45-2001↩ et seq.
4. Tennessee Code § 45-2007↩(i)
5. See also Jasper L. House, Jr., T.C. Memo. 1970-125, reversed 453 F.2d 982↩ (C.A. 5, 1972).