Joseph B. ZYCHINSKI and Marie H. Zychinski, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

ESTATE of Henry J. RICHTER, Deceased, et al., Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Nos. 74–1180 and 74–1181.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1974.

Decided Nov. 25, 1974.

Rehearing and Rehearing En Banc Denied Dec. 17, 1974.

Harvey G. Schneider, St. Louis, Mo., for appellants.

George G. Wolf, Atty., Tax. Div., Dept. of Justice, Washington, D.C., for appellee.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

These appeals are taken from judgments of the United States Tax Court assessing tax deficiencies against the taxpayers of some $1,300 in No. 74–1180 and some $125,000 in No. 74–1181. The facts are not in dispute and are set out in more detail in the opinion of the tax court.[1] The issue presented involves the interpretation of Int.Rev.Code of 1954, § 1372(e)(5), relating to the termination of a corporation's "subchapter S" status.[2] In 1966 and 1967 Henry J. Richter & Company, Inc. (hereinafter the Company) reported net operating losses which it attempted to pass through to its shareholders, the taxpayers here, under subchapter S, The Commissioner argued and the tax court held, however, that the Company's subchapter S status had terminated under Int.Rev.Code of 1954, § 1372(e)(5) since in 1966 more than twenty percent of its "gross receipts" were "passive investment income," to-wit: gains from the "sales or exchanges of stock or securities."

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. Zychinski v. Commissioner, 60 T.C. 950 (1973).

2. Subchapter S, Int.Rev.Code of 1954, §§ 1371–1379, added to the Code in 1958, permits certain corporations to elect to be taxed as a partnership or proprietorship: the net income (or loss) of the business is "passed through" to the shareholders without a corporate tax.

As applicable to the years in question § 1372(e)(5) provided:

*PASSIVE INVESTMENT INCOME.—*

(A) Except as provided in subparagraph (B) [not applicable here], an election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is passive investment income. Such termination shall be effective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation.

\* \* \* \* \* \*

(C) For purposes of this paragraph, the term "passive investment income" means gross receipts derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent to gains therefrom).

Taxpayers do not dispute that well over twenty percent of the Company's gross receipts were gains from the sales or exchanges of stock or securities.[3] They contend, however, that such was not "passive investment income" within the meaning of the statute. The thrust of their argument is that since the Company was a securities dealer "actively" engaged in the business of trading stocks from and for its "inventory," such gain was neither "passive" nor "investment" income.

The difficulty with taxpayers' position, as the Commissioner points out, is that they are "attempting to define colloquially a term which is already defined statutorily." To determine the meaning of "passive investment income" as used in § 1372(e)(5)(A) our reference is directly to the definitional language in § 1372(e)(5)(C):[4]

(C) For purposes of this paragraph, the term "passive investment income" means gross receipts derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom).

We find no ambiguity in the language "gross receipts derived from \* \* \* sales or exchanges of stocks or securities" that would justify resort to the commonly understood meaning of "passive investment income" for clarification. Even if such ambiguity existed, we cannot say that the Commissioner's interpretation, promulgated by regulation,[5] is "unreasonable and plainly inconsistent" with the statute.[6] As succinctly stated by the tax court in Buhler Mortgage Co. v. Commissioner, 51 T.C. 971 (1969), aff'd per curiam, 443 F.2d 1362 (9th Cir. 1971):

The standard used by the Code and regulations does not permit us to look behind the normal characterization of a corporation's receipts in order to classify them as active or passive. \* \* \* We conclude that the test established is one which requires us to look only to the plain meaning of the words used to define the income, not

---

3. The principal activity of the Company was the trading of securities for its own account. As a result of hundreds of transactions the Company realized a "trading profit" of $155,000 in 1966, an amount which far exceeded 20 percent of its gross receipts.

4. *E. g.*, Western Union Tel. Co. v. Lenroot, 323 U.S. 490, 502, 65 S.Ct. 335, 89 L.Ed. 414 (1944); Halpin v. Collis Co., 243 F.2d 698, 701 (8th Cir. 1957).

5. Treas.Reg. § 1.1372–4(b)(5)(x) (1959) provides in part:
[For purposes of section 1372(e)(5)] [g]ross receipts from the sale or exchange of stocks and securities include gains received from such sales or exchanges by a corporation even though such corporation is a regular dealer in stocks and securities.

6. Commissioner v. South Texas Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948).

to the activity required to produce it. 51 T.C. at 977–978.[7]

We have not been unmindful of the criticisms leveled at the tax court's position.[8] Principally, it is urged that it serves no substantive purpose and is unfair to deny subchapter S benefits to an actively conducted business. Support for this position is said to be found in certain congressional comments on § 1372(e)(5) which summarize its effect as limiting "the availability of [subchapter S] treatment to small businesses actively engaged in trades or businesses."[9] We are not persuaded, however, that such generalizations from the legislative history can override the plain meaning of the specific language of the statute.

Moreover, we find ample procedural grounds supporting the result we here reach. The tax laws must be administered with some precision and predictability. The statute and regulation as here interpreted meet this test. The taxpayer's proposed interpretation, on the other hand, leaves room for considerable ambiguity, particularly as to standards for determining whether a securities (or other) dealer is sufficiently "active" in the pursuit of its business to warrant subchapter S treatment.[10] At minimum, the development of standards in this area is in the first instance for the Commissioner.[11] We find no unfairness to the taxpayers in treating them in accordance with Treas.Reg. § 1.1372–4(b)(5)(x)(1959) which, in substances, specifically alerted the Company that its subchapter S status would be terminated in the circumstances here presented.

The judgment is affirmed.

7. *Accord,* Marshall v. Commissioner, 60 T.C. 242 (1973).

8. Seago, Passive Income Limitations Under Subchapter S, 52 Taxes 112 (1974); *see* House v. Commissioner, 453 F.2d 982 (5th Cir. 1972); Valley Loan Ass'n v. United States, 258 F.Supp. 673 (D.Colo.1966).

9. S.Rep.No.1007, 89th Cong., 2nd Sess. 8, U.S.Code Cong. & Admin.News p. 2148 (1966); H.Rep.No.1238, 89th Cong., 2nd Sess. 8 (1966). The complete context of the quotation is as follows:

> When the "passthrough" type of tax treatment was provided for corporations, Congress decided to limit the availability of this treatment to small businesses actively engaged in trades or businesses. Therefore, it denied this treatment to corporations with large amounts of passive income. Accordingly, present law (sec. 1372(e)(5)) provides that a "passthrough" election is to terminate automatically where more than 20 per cent of a corporation's gross receipt are derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities.

This language does not illuminate the ultimate congressional purpose which, we find, is somewhat obscure. The most recent committee pronouncements on the subject speculate that the provision was aimed at rather limited potential abuse: the incorporation of "one's investment activities merely to obtain tax deferral benefits accorded to pension, profit sharing, and similar plans." In view of recent changes in pension taxation for subchapter S corporations, the reports suggest, this need for the provision has largely disappeared. Studies to eliminate it entirely are underway. S.Rep.No.91–1535, 91st Cong., 2nd Sess. 2, U.S.Code Cong. & Admin.News p. 6099 (1970); H.Rep.No.91–1735, 91st Cong., 2nd Sess. 2 (1970).

10. We have some doubt, even by a colloquial definition, whether income derived from the fluctuation of a market price may be characterized as "active."

11. *E. g.,* Treas.Reg. § 1.1372–4(b)(5)(vi) (1959) dealing with the meaning of "gross receipts derived from * * * rents" under § 1372(e)(5)(C).