I. J. MARSHALL and Claribel Marshall, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Flora H. MILLER, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Nos. 73–1953 to 73–1955.

United States Court of Appeals, Tenth Circuit.

Argued July 11, 1974.

Decided Jan. 7, 1975.

James M. Parker, Schlenker, Parker, Payne & Wellborn, Albuquerque, N. M., for appellants.

George G. Wolf, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Scott P. Crampton, Asst. Atty. Gen., for appellee; Meyer Rothwacks, Leonard J. Henzke, Attys., Washington, D. C., of counsel.

Before HILL and SETH, Circuit Judges, and MOORE *, Senior Circuit Judge.

MOORE, Senior Circuit Judge:

I. J. Marshall [1] and Flora H. Miller [2] are residents of Roswell, New Mexico. Both are major shareholders of the Realty Investment Company of Roswell, Inc. (Realty), a New Mexico corporation authorized, under its articles of incorporation, to conduct and engage in: a small loan business; an insurance agency; and

* Honorable Leonard P. Moore, Senior Judge, United States Court of Appeals, Second Circuit, New York, N. Y., sitting by designation.

1. His wife, Claribel Marshall, is also a party because they filed a joint tax return.

2. For the taxable years 1965 and 1966 Flora H. Miller filed joint returns with her husband now deceased which accounts for the two docket numbers in her name.

a real estate brokerage business, including the operation, development, handling, management, and sale of real property.

Realty filed its income tax returns as a regular corporation through the taxable year ending on June 30, 1967. It then filed an election to be taxed as a small business corporation under subchapter S of the Internal Revenue Code. Its election was to be effective for the taxable year beginning on July 1, 1967.

On its small business corporation income tax return filed for fiscal 1968, Realty reported gross receipts of $79,028.06, broken down as follows:

| Small Loan Department | | |
|---|---|---|
| Interest Earned | $35,938.67 | |
| Default and Deferment Charges | 2,509.99 | |
| Life Insurance Premiums | 3,562.48 | |
| Filing & Recording Fees | 115.62 | |
| | | $42,166.76 |
| Real Estate Department | | |
| Rentals Received | $12,297.25 | |
| Commissions Earned | 5,299.86 | |
| Interest Income | 14,731.01 | |
| Discounts Earned | 572.51 | |
| Escrow Fees | 105.78 | |
| | | $33,006.41 |
| Rental Income—Office Building | | |
| Rentals Received | $ 1,678.00 | |
| Miscellaneous | 63.30 | |
| | | $ 1,741.30 |
| Farnsworth Building | | |
| Rentals Received | | $ 1,321.03 |
| Oil & Gas Royalties | | $ 792.56 |
| | | $79,028.06 |

During Realty's 1968 fiscal year, its customers repaid loans to it in the amount of $288,129.79. These repayments of principal were not reported as gross receipts in the corporation's 1968 income tax return.

In spite of Realty's wide ranging business interests, it sustained a net operating loss of $90,404.32 for fiscal year 1968, a fact which it reported on its Form 1120–S income tax return. On Schedule K of Form 1120–S, Shareholder's Share of Income, the following apportionment of undistributed net operating loss was made:

| I. J. Marshall | $44,599.43 |
|---|---|
| Flora H. Miller | 44,599.43 |
| P. L. Duncan | 1,205.46 [3] |

On their 1968 joint federal income tax returns, I. J. Marshall and his wife, Claribel, claimed an ordinary loss deduction as a result of their share of Realty's operating loss. On her 1968 federal income tax return, Flora H. Miller claimed an ordinary loss deduction resulting from her share of Realty's operating loss, and applied for certain loss carryback adjustments for the years 1965, 1966 and 1967. These adjustments were tentatively allowed.

The Commissioner of Internal Revenue later determined that the taxpayers were not entitled to deduct their share of Realty's 1968 net operating loss because he found that Realty was ineligible to elect Subchapter S treatment. The

3. P. L. Duncan is not a party to this litigation.

disallowance resulted in the assessment of deficiencies against the Marshalls in the amount of $819.06 for fiscal 1967 and of $10,113.09 for fiscal 1968. Deficiencies were assessed against Flora H. Miller for taxable years 1965, 1966, 1967 and 1968 in the amounts of $1,152.30, $2,066.79, $665.33 and $497.39, respectively.

On petition for redetermination of tax, the Tax Court, Scott, J., 60 T.C. 242, sustained the Commissioner's determination. Because we agree with both the Commissioner and the Tax Court that Realty's Subchapter S election for its 1968 tax year was terminated under Section 1372(e)(5) of the Internal Revenue Code of 1954, we affirm.

Subchapter S of the Internal Revenue Code of 1954 (Sections 1371–1377) was enacted "[t]o permit shareholders in small-business corporations, in lieu of payment of the corporate tax, to elect to be taxed directly on the corporation's earning . . . ." S.Rep. No.1983, 85th Cong. 2d Sess., U.S.Code, Congressional & Administrative News, pp. 4791, 4876 (1958). By the same token, if the electing corporation should sustain a net operating loss, such loss is generally deductible from the gross incomes of the shareholders. The election of Subchapter S treatment is particularly useful when the electing corporation has suffered a net operating loss and there is no way to take advantage of the loss (for tax purposes) at the corporate level while the shareholders of the corporation have other income which can be offset thereby.

Subsection (e) of Section 1372 establishes certain circumstances under which a corporation's election of this provision shall terminate. It provides that:

(A) Except as provided in subparagraph (B), an election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is passive investment income. Such termination shall be ef-

fective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation.

(B) Subparagraph (A) shall not apply with respect to a taxable year in which a small business corporation has gross receipts more than 20 percent of which is passive investment income, if—

(i) such taxable year is the first taxable year in which the corporation commenced the active conduct of any trade or business or the next succeeding taxable year; and

(ii) the amount of passive investment income for such taxable year is less than $3,000.

(C) For the purposes of this paragraph, the term "passive investment income" means gross receipts derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom).

The Service, in this case, has decided that Realty's gross receipts for fiscal 1968 amounted to $79,028.06. Furthermore, it has concluded that $53,752.18 of this amount can be labeled "passive investment income" because it constituted interest charges to Realty's customers and $15,296.28 is "passive" because it was rent paid by tenants of Realty. The Service thus refused to recognize Realty's claim of Subchapter S status because it found that well over 20% of Realty's gross receipts was attributable to "passive investment income."

In spite of the clear language of Section 1372(e)(5), which specifies "rents" and "interest" to be "passive investment income," the taxpayers argue that Realty's election of Subchapter S treatment was never terminated. They base their position on two arguments. First, they claim that Realty received $288,129.78 in repayments of loan principal during the 1968 tax year, and that this amount should be included in any calculation of

Realty's gross receipts for fiscal 1968. Thus, according to the taxpayers, Realty's "gross receipts" for fiscal 1968 amounted to approximately $370,000. and the approximately $70,000. that the government has labeled "passive investment income" does not amount to twenty percent of Realty's gross receipts. Second, the taxpayers contend that, even if the loan repayments are excluded from Realty's gross receipts, Realty was, nevertheless, not in violation of the twenty percent passive investment income limitation because the receipts attributable to "interest" were earned by a company that was *actively* engaged" in the business of making loans.

The term "gross receipts" used in Section 1372(e)(5)(C) is not defined in the Code. The Commissioner, however, has defined the term in Section 1.1372–4(b)(5)(iv) of the Income Tax Regulations. That regulation provides as follows:

> The term "gross receipts" means the total amount received or accrued under the method of accounting used by the corporation in computing its taxable income. Thus, the total amount of receipts is not reduced by returns and allowances, cost, or deductions. For example, gross receipts will include the total amount received or accrued during the corporation's taxable year from the sales or exchange . . . of any kind of property, from investments, and for services rendered by the corporation. However, gross receipts does not include amounts received as a loan, or a repayment of a loan, as a contribution to capital, or on the issuance by the corporation of its own stock.

■ The ordinary rule to be followed by the courts in disputes involving the validity of one of the Service's regulations is that the regulation must be upheld unless it is unreasonable or plainly inconsistent with the statute it is intended to implement. The theme of Reg. 1.1372–4(b)(5)(iv) is a demand for consistency on the part of the taxpayer. This approach is hardly "unreasonable."

In each case it is the corporation, depending upon its method of accounting, which determines "the total amount received or accrued during the corporation's taxable year . . . .." The corporation is given a substantial amount of leeway in making this calculation as long as it does not attempt to use two different systems of calculation: one for determining the feasibility of Subchapter S status and the other for reporting the taxable gain of the corporation. Furthermore, Section 1.1372–4(b)(5)(iv) comports with the ordinary understanding of the term "gross receipts." As pointed out by the Tax Court below, the repayment of a loan is never considered a receipt under either the cash or accrual method of accounting.

■ In the case at bar, the taxpayers are not claiming that the regulation in question is unreasonable. Realty did not include the $288,000. of loan repayments when it reported its income for the 1968 fiscal year. Rather, the taxpayers are specifically arguing that the regulation is inconsistent with the statute empowering it and must fall for that reason. Taxpayers rely primarily on Valley Loan Association v. United States, 258 F.Supp. 673 (D.Colo.1966) and House, Jr. et al. v. Commissioner of Internal Revenue, 453 F.2d 982 (5th Cir., 1972). In *Valley Loan* the district court reasoned that: (i) when originally passed by Congress, Section 1372(e)(5) was intended only to exclude personal holding companies from the option of electing treatment under Subchapter S because the subsection was originally entitled "Personal Holding Companies," (ii) small loan companies, since 1938, have been congressionally excluded from characterization as "Personal holding company income," Section 541, Internal Revenue Code of 1954, (iii) if loan repayments, pursuant to Reg. 1.372–4(b)(5)(iv), did not constitute "gross receipts," then small loan companies would, *a fortiori,* never be able to elect Subchapter S treatment and would be treated as "Personal Holding Companies" in direct violation of congressional intent as expressed in 1938.

The short answer to both the arguments of the taxpayers and the opinion of the District Court in *Valley Loan, supra,* is that in 1966 Congress changed the title of Section 1372(e)(5) from "Personal holding company income" to "Passive investment income." After 1966 it could no longer be argued either that Section 1372(e)(5) was not intended to apply to business operations other than personal holding companies or that application of Regulation 1.1372–4(b)(5)(iv) resulted in a mystical transubstantiation that made personal holding companies from small loan companies.

Regulation 1.1372–4(b)(5)(iv) precludes a corporation from manipulating its gross receipts by artificial transactions which have no effect on its real income. Absent this regulation, an electing corporation, approaching the end of its taxable year and realizing that its passive investment income would exceed twenty percent of its gross receipts, could simply issue stock to its shareholders for an amount sufficient to fulfill the requirements of the statute. Or, by the same token, the corporation could make a short term loan, which would not decrease its gross receipts, and take repayment in time to inflate its gross receipts for the taxable year.

The Service's definition of "passive investment income" may well exclude some types of business operations from Subchapter S treatment but there is nothing in the statute or its legislative history which would suggest that every corporation should, as a matter of right, be able to make an election under Section 1372(a). Indeed, the various requirements under Sections 1371 and 1372 show that not every corporation is entitled to the benefits of Subchapter S.

Alternatively, the taxpayers have argued that the $38,448.66 of interest income earned by Realty's small loan department and the $15,303.52 of interest income earned by its real estate department are not "passive investment income" as that term is used in Section 1372(e)(5) of the Internal Revenue Code of 1954.

Basically, taxpayers argue that Realty is *actively* engaged in the small loan and real estate business, and that all income earned in those capacities, no matter in what form, is therefore, "actively" earned. The same argument was urged unsuccessfully in Zychinski et al. v. Commissioner and Estate of Richter et al. v. Commissioner of Internal Revenue, 506 F.2d 637, decided November 25, 1974, 8th Circuit. Taxpayers rely on House v. Commissioner of Internal Revenue, *supra,* which held that the term "interest" as used in Section 1372(e)(5)(C) did not include interest which would not be part of the "personal holding company income" of a corporation and that a finance company not subject to personal holding company tax could have no "personal holding company income."

Once again, the answer to the argument of the taxpayers is that the title of Section 1372(e)(5) was changed in 1966 from "Personal holding company income" to "Passive investment income." Even if they are correct that the original version of the section intended to incorporate by reference the provisions of the Code referring to the personal holding companies, their analysis is irrelevant to this case. The *House* case, though decided in 1972, concerned tax returns for the 1964 and 1965 tax years. The Fifth Circuit was most strongly persuaded to hold that reference to the Code's personal holding company rules was necessary because of the fact that in 1966 Congress changed the title of Section 1372(e)(5) to "Passive investment income," a change that would have been completely pointless unless Congress had originally attached some value to the title "Personal holding company income." If the reasoning of the Fifth Circuit is correct (and taxpayers have leaned heavily on that reasoning), then the 1966 revision of the title can only be seen as Congress' calculated effort to erase utterly any implication that a small corporation must be a personal holding company before it can be excluded from Subchapter S treatment by Section 1372(e)(5). The opinion of the Fifth Circuit in *House* is

pregnant with this very implication and thus is no support for the position taken by the taxpayers.

Taxpayers are left with only a single argument, unsupported by authority: that interest "actively" earned cannot be "passive investment income." This argument is in direct conflict with the clear language of Section 1372(e)(5) which enumerates "interest" as a *per se* form of "passive investment income." No qualification to the term "interest" is given in the statute. We, therefore, must assume that Congress used the term in its ordinary sense, *viz.*, "compensation for the use or forebearance of money." Deputy v. duPont, 308 U.S. 488, 498, 60 S.Ct. 363, 368, 84 L.Ed. 416 (1940). There can be no doubt that the interest income earned by Realty's small loan and real estate divisions comes within the ambit of this term and thus is defined as passive investment income.

Because of our holding with respect to Realty's interest income, we find it unnecessary to address the question of how the income received from the tenants of the Farnsworth Building is to be classified.

We find that the Commissioner's denial of Subchapter S status to Realty was proper and we therefore affirm the decision of the Tax Court.