Kenneth W. DOEHRING, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 75–1148.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1975.

Decided Dec. 11, 1975.

Harvey G. Schneider, St. Louis, Mo., for appellant.

Leonard J. Henzke, Jr., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

Kenneth Doehring appeals from a judgment of the United States Tax Court assessing a deficiency against him in the amount of $16,441.87 for the taxable years 1962 and 1963. The issue presented is whether the subchapter S election of First Finance Company, a corporation in which Doehring owned 50 percent of the stock, terminated for its fiscal years 1962 and 1963. The Tax Court held that the election terminated. We disagree and, accordingly, reverse.

A detailed description of the undisputed facts, including the arithmetic, is contained in the Tax Court's opinion.[1] We outline only the essential facts here.

In 1962 and 1963, taxpayer Doehring and Paul Puckett each owned 50 percent of the stock in First Finance Company (Finance), a small loan business operating in Tennessee under the Tennessee Industrial Loan and Thrift Act. Finance actively engaged in the loan business, making loans not exceeding $500 to persons who generally could not obtain financing elsewhere.

In 1962, a timely election was made by the company to be taxed under subchapter S of the Internal Revenue Code, 26 U.S.C. § 1371 et seq. The election was never revoked during the taxable years at issue under § 1372(e)(2) and, at all pertinent times, Finance qualified as a "small business corporation" within the meaning of § 1371(a). At no time was Finance a personal holding company under § 542 of the Code.

Because Finance encountered business losses in 1962 and 1963, taxpayer passed through his pro rata share of loss in order to offset part of his gross income.[2] In those years, taxpayer claimed loss deductions in the amounts of $14,556 and $7,611. Paul Puckett, the other 50 percent shareholder, claimed similar deductions.

In 1972, the Commissioner of Internal Revenue issued a timely statutory notice of deficiency to taxpayer in the amount of $16,441.87 for the taxable years in question. The Commissioner determined that under § 1372(e)(5), the termination provision of subchapter S, Finance's election had terminated because more than 20 percent of its gross receipts in 1962 and 1963 was derived from interest. The Commissioner arrived at this determination by characterizing Finance's service charge revenue as interest for purposes of § 1372(e)(5). Thus taxpayer's deductions for his share of the company's net operating losses were disallowed. Puckett was also assessed a deficiency for the same reason.[3]

Section 1372(e)(5), under which the Commissioner determined that Finance's

---

1. The Tax Court opinion is unofficially reported at 33 CCH Tax Ct.Mem. 1035 (1974).

2. Each shareholder is allowed a deduction equal to his pro rata share of the corporation's net operating loss. 26 U.S.C. § 1374(b).

3. The Tax Court refused to assess the proposed deficiency in Puckett's case holding, on the authority of House v. Commissioner, 453 F.2d 982 (5th Cir. 1972), discussed infra, that Finance's subchapter S status did not terminate in the years in question. Paul E. Puckett, 33 CCH Tax Ct.Mem. 1038 (1974).

subchapter S status terminated, provides:

(5) *Personal holding company income.*

An election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is derived from royalties, rents, dividends, *interest*, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom). Such termination shall be effective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation. (Emphasis supplied.)

It should be noted that the heading of this provision reads "Personal holding company income." These words were changed to "Passive investment income" in 1966 when § 1372(e)(5) was amended.[4] Taxpayer argues, *inter alia*, that the preamendment heading, which was in effect during the taxable years in question, was a direct reference to § 542(c)(6) of the Code which excepts certain small loan companies (including Finance) from the definition of a personal holding company. We agree.[5]

 The legislative history surrounding the preamendment version of § 1372(e)(5) is silent as to whether Congress intended that direct reference be made to the personal holding company sections of the code to determine the terminability of subchapter S corporations. It is apparent however that the

policy which excepts certain loan and finance companies from the personal holding company surtax is identical to one of the policies of § 1372(e)(5). That policy is to accord tax benefits to certain *actively* conducted finance businesses and deny tax benefits to businesses which earn a substantial amount of passive income. Compare S.Rep. 89–1007, U.S. Code Cong. & Admin.News, pp. 2141, 2148 (1966) (subchapter S), with, S.Rep. 87–2047, U.S.Code Cong. & Admin.News, p. 2825 (1962) (personal holding company). We are convinced that this policy should control with respect to the preamendment subchapter S status of an actively conducted small loan business which is specifically excepted from the definition of a personal holding company.[6]

The Commissioner concedes that the only case squarely in point was decided in favor of the taxpayer. In *House v. Commissioner*, 453 F.2d 982 (5th Cir. 1972), the Fifth Circuit held that the small loan business there involved did not lose its subchapter S status. The court reasoned that the business was excepted from the definition of "personal holding company" and thus was not subject to the termination provision of subchapter S. The court stated:

Subheadings on the respective sections of a statute will not be read as destroying the clear meaning of the body of the Act. Where, however, there is no collision involved, it is proper to consult both the section heading and the section's content to come up with the statute's clear and total meaning. We do not believe that proper statutory construction will permit the Commissioner to lift or isolate

---

4. Act of April 14, 1966, Pub.L.No.89–389, § 3, 80 Stat. 114, *amending*, 26 U.S.C. § 1372(e)(5).

5. Our disposition of this issue renders unnecessary consideration of the other arguments presented by taxpayer Doehring.

6. The Commissioner argues that if reference is to be made to the personal holding company sections of the Code, reference should be made to § 543(a)(1), which defines personal holding company income to include interest. This ar-

gument is presumably based on the premise that reference should be made to the more specific section of the Code. Under the facts of this case however, we question whether § 543(a)(1) is more specific than § 542(c)(6), which specifically excepts the interest income of Finance from the personal holding company surtax. Moreover, we decline to indulge in technical word games. Our purpose here is to effect the congressional policy described above.

the word "interest" from its context to give it a meaning that does violence to Congressional purpose.

*Id.* at 987.[7] *Accord, Swank & Son, Inc. v. United States,* 362 F.Supp. 897, 900 (D.Mont.1973), *aff'd per curiam,* 522 F.2d 981 (9th Cir. 1975).

We note further that the Tax Court sustained the Commissioner's deficiency with respect to taxpayer Doehring, but disallowed the proposed deficiency with respect to his fellow shareholder Puckett, whose situation is identical to that of Doehring. Since Puckett resides in Alabama and is under the jurisdiction of the Fifth Circuit, 26 U.S.C. § 7482, the Tax Court felt bound to apply the *House* decision in his case. Since Doehring resides in Missouri and is under the jurisdiction of this court, the Tax Court felt free to apply its own rule. This result was required, according to the Tax Court, by its self-imposed policy of following a controlling decision of the court of appeals to which a direct appeal lies. *See Jack E. Golsen,* 54 T.C. 742, 757 (1970), *aff'd,* 445 F.2d 985 (10th Cir.), *cert. denied,* 404 U.S. 940, 92 S.Ct. 284, 30 L.Ed.2d 254 (1971).

The Commissioner strenuously argues that certain cases construing the *postamendment* termination provision of subchapter S require affirmance of the Tax Court's decision. *See Zychinski v. Commissioner,* 506 F.2d 637 (8th Cir. 1974), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2397, 44 L.Ed.2d 666 (1975); *Marshall v. Commissioner,* 510 F.2d 259 (10th Cir. 1975). We disagree.

In *Zychinski,* a panel of this court held that the subchapter S status of an *ac-*

*tively* operated securities business was terminated because over 20 percent of its gross receipts in the year in question was derived from sales or exchanges of securities. *Zychinski* is distinguishable from this case in at least three respects however. First, that case involved a construction of the termination provision of subchapter S *after* the 1966 amendment. We deal here with the preamendment version of § 1372(e)(5).[8] Secondly, *Zychinski* involved a business which recognized excessive gains from the sale of securities. Our panel was partially persuaded by the existence of a regulation, promulgated under § 1372(e)(5), which included within the termination rule gains from such sales by a corporation regularly engaged in the business of selling securities. *Id.* at 638–639 & n.5. However the regulations contain no concomitant clarifying section regarding interest earned by a small loan business. Thirdly, *Zychinski* involved no comparable specific exception in the personal holding company provisions.[9] Here, we deal with a termination provision labeled "Personal holding company income" and an express exception to the definition of a personal holding company.

It is true that in *Zychinski* we rejected the rule that every actively conducted business is immune from the termination provisions of subchapter S. The reason was that such an interpretation would create considerable ambiguity in determining whether a business was sufficiently active to warrant exclusion from § 1372(e)(5). Our holding creates no ambiguity however. We hold only that the preamendment termination provision of

---

7. The Fifth Circuit has recently declined, by a 10 to 3 vote, to reconsider the *House* decision en banc. *See Puckett v. Commissioner,* 522 F.2d 1385 (5th Cir. 1975) in which the Tax Court's decision in that case was summarily affirmed.

8. The Commissioner argues that general language contained in S.Rep. 89–1007, U.S.Code Cong. & Admin.News p. 2141, 2160 (1966), indicates that no substantive change was intended by changing the heading from "Personal holding company income" to "Passive investment income." The Commissioner is, we feel, attaching too much significance to language

which is equivocal at best. The change " * * would have been completely pointless unless Congress had originally attached some value to the title 'Personal holding company income.'" *Marshall v. Commissioner,* 510 F.2d 259, 263 (10th Cir. 1975).

9. Prior to 1964, gains from sales or exchanges of stock by regular dealers of securities was excepted from the definition of "Personal holding company income." 26 U.S.C. (1958 ed.) § 543(a)(2). This exception was eliminated however by the Revenue Act of 1964. Act of February 26, 1964, Pub.L.No.88–272, § 225(d), 78 St. 81.

subchapter S does not apply to small loan companies (like Finance) which are *specifically excepted* from the definition of personal holding company.[10] We emphasize that on post-1966 income, the principles of *Zychinski* will control.

In *Marshall v. Commissioner, supra,* the Tenth Circuit held that interest income earned by an investment company's small loan department was "Passive investment income" for purposes of the postamendment version of § 1372(e)(5). The Court effectively distinguished *House* however, reasoning that, " * * * the answer to the argument of the taxpayers is that the title of Section 1372(e)(5) was changed in 1966 from 'Personal holding company income' to 'Passive investment income.'" *Id.* at 263. Thus the *Marshall* case did not reach the issue presented here and represents no support for the Commissioner.

For the reasons enumerated herein, the Tax Court's decision is reversed.

---

**10.** The taxpayer in *Zychinski* filed a petition for certiorari arguing that our panel decision conflicted with the *House* case and thus created a split between the circuits warranting Supreme Court review. The Commissioner opposed the petition on the grounds that *House* and *Zychinski* were distinguishable for the reasons enumerated herein. Significantly, certiorari was in fact denied. *Zychinski v. Commissioner,* 421 U.S. 999, 95 S.Ct. 2397, 44 L.Ed.2d 666 (1975).